In the Matter of the CARE AND TREATMENT OF Wilbur SCHOTTEL, Appellant,

v.

STATE of Missouri, Respondent.

No. SC 86137.

Supreme Court of Missouri, En Banc.

April 12, 2005.

Emmett D. Queener, Office of the Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., David J. Hansen, Asst. Atty. Gen., Jefferson City, for Respondent.

LAURA DENVIR STITH, Judge.

Wilbur Schottel appeals the trial court's denial of his petition for release from confinement as a sexually violent predator (SVP) following an initial hearing at which the judge found that he had failed to meet his burden under section 632.498, RSMo 2000,[1] of showing probable cause to believe that he is safe to be at large and will not re-offend upon release. In determining whether an SVP petitioning for release has met his burden of proof under that statute, a judge is not to weigh the evidence or make credibility determinations, but is merely to determine whether probable cause exists, that is, whether the evidence presents a triable issue of fact that the person is safe to be at large and will not reoffend. Here, the record unequivocally shows that Mr. Schottel presented sufficient evidence to meet this burden. This Court therefore reverses the judgment and remands the case for the further hearing required under section 632.498 before a judge or jury as fact finder to determine whether Mr. Schottel should continue to be confined as an SVP.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Commitment of Mr. Schottel.

In 1995, Mr. Schottel was arrested for the molestation of five girls, ages eight to thirteen years. Later that year, he pled guilty to one count of sodomy and was sentenced to fifteen years in prison. In February 2000, after he had been released from prison for one day, the State filed a petition in the Clay County Circuit Court alleging that he was an SVP within the

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

meaning of section 632.480 and sought his confinement in a Department of Mental Health facility.

The court found probable cause to believe that Mr. Schottel was an SVP. Initially, Mr. Schottel opposed his designation as an SVP and challenged the SVP statute on constitutional grounds. Before his objections could be ruled on, he stipulated that he was an SVP under section 632.480 and was committed to the Department of Mental Health (DMH). *See Schottel v. State,* 121 S.W.3d 337, 338 (Mo.App. W.D.2003).

B. *Periodic Examinations of Mental Condition of SVP.*

A person is not committed as an SVP indefinitely. Section 632.498 provides for "a current examination of the person's mental condition made once every year by the director of the department of mental health or designee." The director issues a report and provides it to the court and the committed person. If the director determines "that the person's mental abnormality has so changed that the person is not likely to commit acts of sexual violence if released, the director shall authorize the person to petition the court for release." Sec. 632.501. The court then holds a hearing at which the burden is on the State to show "beyond a reasonable doubt that the petitioner's mental abnormality remains such that the petitioner is not safe to be at large and that if discharged is likely to commit acts of sexual violence." *Id.*

But, if the director does not determine that the person qualifies for release, then a different process ensues. The director must inform the committed person of his right to petition the court for release over the director's objection. If the SVP petitions for release, the court holds a preliminary probable cause hearing, and:

> [I]f the court at the hearing determines that probable cause exists to believe that the person's mental abnormality has so changed that the person is safe to be at large and will not engage in acts of sexual violence if discharged, *then the court shall set a hearing* on the issue.

Sec. 632.498 (emphasis added). If the court sets such a second hearing, either party can request a jury trial and to have the petitioner's mental condition evaluated by experts. *Id.* Section 632.498 provides that the burden of proof at that second hearing:

> shall be upon the state to prove beyond a reasonable doubt that the committed person's mental abnormality remains such that the person is not safe to be at large and if released is likely to engage in acts of sexual violence.

C. *Periodic Examinations of Mr. Schottel's Mental Condition.*

Mr. Schottel was committed as an SVP in June 2000. As required by section 632.498, the director of DMH conducted a review and issued a report in June 2001 and again in June 2002. Both reports recommended that Mr. Schottel not be released. Mr. Schottel petitioned for court review on both occasions. It is the denial of the second of these petitions, following an evidentiary hearing in July 2003, that is the subject of this appeal.[2]

At the probable cause hearing on the director's second refusal to recommend release, Mr. Schottel orally moved that section 632.498 be held unconstitutional. The motion was overruled, and Mr. Schottel

---

**2.** Mr. Schottel also appealed the denial of his first release petition, filed February 27, 2002, arguing that the court erred in refusing to release him over the director's objection without conducting any sort of hearing. This appeal was dismissed as moot once the court held such a probable cause hearing on the second release petition, filed October 31, 2002. *Schottel,* 121 S.W.3d at 340.

offered expert testimony in support of his claim that he had shown "probable cause exists to believe that [his] mental abnormality has so changed that [he] is safe to be at large and will not engage in acts of sexual violence if discharged ..." Sec. 632.498. The State offered contrary evidence, including the June 2002 report, other expert testimony, and the June 2003 report prepared while the court was considering the director's 2002 refusal to recommend release.

After considering this evidence, the court issued an order denying Mr. Schottel's petition for release without further hearing. The order denying relief made no factual findings. It simply tracked the statutory language by stating that the judge found "no probable cause that the respondent's mental abnormality has so changed that he is safe to be at large and will not engage in acts of sexual violence if discharged."

Because his petition was denied at the probable cause stage, Mr. Schottel was not given a second hearing—effectively a trial on the merits—before a judge or jury. He appealed to the Missouri Court of Appeals, Western District. That court transferred the case to this Court because it involves the constitutional validity of section 632.498 and so is within this Court's exclusive appellate jurisdiction. Mo. Const. art. V, sec. 3.

## II. CONSTITUTIONAL CHALLENGE TO SECTION 632.498

Mr. Schottel alleges that section 632.498 denies him due process because it requires that, in order to be entitled to an evidentiary hearing on whether he is still an SVP, he must first show that he is safe to be at large and will not reoffend. This means that he must meet a higher burden to get an evidentiary hearing than the State is required to meet at that hearing or that it was required to prove in order to commit him initially. Further, the standard set by the statute is impossible for him to meet in that it requires him to show that he will not, rather than just likely will not, ever offend in the future. This claim presents an issue of law, which this Court determines *de novo*. *Ochoa v. Ochoa*, 71 S.W.3d 593, 595 (Mo. banc 2002).

### A. Preservation of Constitutional Issue.

Mr. Schottel raised his constitutional challenge at the initial hearing on his second petition for release. The State suggests that he should have raised the issue during his initial commitment proceeding or when he challenged and appealed denial of release following his first yearly review in June 2001. Generally, a constitutional question must be raised at the earliest possible opportunity in order to be preserved for appellate review. *City of Chesterfield v. Dir. of Revenue*, 811 S.W.2d 375, 378 (Mo. banc 1991). Mr. Schottel did raise a constitutional challenge in his initial commitment proceeding, but when he stipulated to his status as an SVP, that challenge became moot. In any event, the propriety of Mr. Schottel's initial commitment and the denial of his first petition for release are not before this Court on this appeal. This appeal concerns only the denial of Mr. Schottel's second petition for release, filed in October 2002, and his success in this petition is not determined by whether his prior claims were meritorious. The State cites no authority for its argument that this Court nonetheless should hold that a question is not preserved for purposes of appeal if it could have been raised to oppose an earlier denial of release, and this Court declines

to so hold.[3]

### B. Section 632.498 is Constitutional.

■ As noted, under section 632.498, if the director of DMH objects to release, then the committed person may petition for release over objection. The court normally must hold an initial hearing on the petition, and:

> If the court *at the hearing* determines that *probable cause exists to believe* that the person's mental abnormality has *so changed that the person is safe to be at large and will not engage in acts of sexual violence* if discharged, then the court shall *set a hearing* on the issue.

Sec. 632.498 (emphasis added). Mr. Schottel claims that section 632.498's placement of the burden on him to show that he "is" safe and "will not" engage in acts of sexual violence requires him to do the impossible—prove that he absolutely, with certainty, will be safe and will not reoffend if released. He argues that, since no one can predict the future with absolute certainty, this standard is impossible to meet.

He further argues that placing a higher standard of proof on the committed person in order to cause the issue of release to proceed to trial than is placed on the State to obtain a trial regarding the initial confinement under section 632.480, or to keep him confined once he makes a probable cause showing, amounts to a violation of due process.[4]

■ This Court rejects Mr. Schottel's hyper-technical reading of the words "is" and "will not." Statutes are presumed to be constitutional and will not be invalidated unless they clearly violate a constitutional provision. *Board of Educ. of St. Louis v. State,* 47 S.W.3d 366, 368–369 (Mo. banc 2001). The general rule of statutory construction requires a court to determine the intent of the legislature based on the plain language used and to give effect to this intent whenever possible. *Delta Air Lines v. Dir. of Revenue,* 908 S.W.2d 353, 355 (Mo. banc 1995). To ascertain legislative intent, the courts should examine the words used in the statute, *the context* in which the words are used and

---

3. As the State reluctantly notes, a constitutional issue has been found to be preserved, even if not raised in the initial pleadings, if it was raised sufficiently early in the process to allow the trial court to identify and rule on the issue and to give adequate notice to the opposing party. *State ex rel. Tompras v. Board of Election Com'rs of St. Louis County,* 136 S.W.3d 65, 66 (Mo. banc 2004). *See also Call v. Heard,* 925 S.W.2d 840, 847 (Mo. banc 1996) (motion for new trial not too late where no surprise resulted). No prejudice arose from waiting to raise the issue until the initial court appearance on the petition for release at issue here.

4. Mr. Schottel also initially contended in this Court that section 632.498 is not severable from the remainder of the sections of chapter 632 involving commitment of sexually violent predators and that the entire act must be held unconstitutional, precluding commitment of any person as a sexually violent predator. He conceded at oral argument, however, that his challenge to the other sections of the code has

been mooted by the 2004 amendments to section 632.498, found in RSMo Supp.2004, which change the standard for determining when someone committed as an SVP is subject to release under the statute. He now challenges only section 632.498 as it stood prior to the 2004 amendment.

The State asks that this Court nonetheless offer its opinion on the constitutionality of the current version of the statute also and to apply it to Mr. Schottel. However, as he was denied release under the previous version of the statute, that is the only one before the Court. This Court cannot offer advisory opinions on issues that may arise in the future as to Mr. Schottel or other persons committed as SVPs. *See In the Matter of the Estate of Van Cleave,* 574 S.W.2d 375, 376 (Mo. banc 1978) (this Court cannot and does not issue advisory opinions). *See also State ex inf. Danforth v. Cason,* 507 S.W.2d 405, 418 (Mo. banc 1973) (accord).

the problem the legislature sought to remedy by the statute's enactment. *State ex rel. Whiteco Indus., Inc. v. Bowers,* 965 S.W.2d 203, 207 (Mo.App. E.D.1998). Any doubt concerning the constitutionality of a statute must be resolved in favor of its validity. *State v. Mahurin,* 799 S.W.2d 840, 842 (Mo. banc 1990).

 Applying these principles here, this Court agrees with the State that section 632.498, read as a whole, does not require the petitioner to prove that he is absolutely certain not to reoffend in order to be entitled to a second hearing. As Mr. Schottel notes, it would be absurd to put such a requirement in place and then to require a further hearing before a fact finder at which a far lesser standard is required to be met and the burden of proof is shifted to the State. When examining statutes, this Court presumes that the legislature did not intend to enact an absurd law and favors a construction that avoids unjust or unreasonable results. *State ex rel. McNary v. Hais,* 670 S.W.2d 494, 496 (Mo. banc 1984). "In interpreting statutes, we must both strive to implement the policy of the legislature, and also harmonize all provisions of the statute." *20th & Main Redevelopment P'ship v. Kelley,* 774 S.W.2d 139, 141 (Mo. banc 1989).

Read in context, it is clear that, at the initial hearing, the legislature merely intends the judge to act in a gatekeeper role. He or she is not asked to reach a final decision as to the person's danger to the community or whether the person is still an SVP, but to determine whether *"probable cause exists to believe"* that the person's abnormality has so "changed" that the person is safe to be at large and will not engage in acts of sexual violence—that

is, will not commit sexually violent offenses—if released.

In this context, the legislature's use of the words "will not" is not intended to require proof of certainty, but merely to constitute a shorthand way of referring to the requirement that the petitioner must make a preliminary showing that he is not likely to engage in further acts of sexual violence, without restating the longer and more awkward description of an SVP contained in section 632.480.5.[5] As the State puts the issue:

> The legislature used slightly different language in 632.498 to express that level of risk—probable cause the person will not offend—but clearly did not intend to establish a different level of risk.
>
> . . . .
>
> To suggest that the legislature intended to create such a variety of risk levels when it used the terms probable cause to believe the person "will not" and "likely" strains credulity—and is an obvious attempt to interpret the statute in a way that makes it unconstitutional.

Despite the fact that the legislature "has chosen to write these various ... statutes in slightly different ways and with slightly different language, their plain meaning, as in the statute before us, is clear." *Lewis v. Gibbons,* 80 S.W.3d 461, 465 (Mo. banc 2002) (interpreting residency requirement to qualify as candidate for judge). The petitioner need not show a certainty, but merely that there is probable cause to believe that he is safe to be at large and is more likely than not to not reoffend.

## III. PROBABLE CAUSE DETERMINATION

 Mr. Schottel argues that the court below erred in holding that he had not

**5.** An SVP is a "person who suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined ..." Sec. 632.480.5.

shown probable cause to believe that he was more likely than not to not reoffend. This Court agrees that the evidence presented by Mr. Schottel was sufficient to constitute probable cause to determine that he no longer met the statutory definition of an SVP. Mr. Schottel presented a written evaluation completed by Dr. Delaney Dean, an attorney and psychologist, after she evaluated Mr. Schottel in January 2002 and again in October 2002. Dr. Dean concluded after both evaluations that "Mr. Schottel's mental abnormality has changed such that, if released, he is unlikely to engage in acts of sexual violence."

Dr. Dean supported her evaluation with findings that Mr. Schottel had diligently cooperated with treatment, had successfully completed assigned tasks, controlled his impulsivity, thereby showing self-control, that he had admitted that he had sexually offended and expressed awareness of the harm he had caused his victims and remorse for the harm, and that he had a relapse prevention program that is "well thought-out and reasonable." This led Dr. Dean to believe that Mr. Schottel's risk level for re-offending is "quite low" and that he fit only one of 20 risk factors associated with re-offending.

Mr. Schottel also presented deposition testimony of Dr. Luis Rosell, a licensed clinical psychologist and experienced certified sex offender treatment provider. Dr. Rosell came to very similar conclusions concerning Mr. Schottel's cooperativeness and noted that he had completed every class that had been offered to him at the Missouri Sexual Offender Treatment Center (MSOTC), although not a full relapse-prevention class, as it had not yet been offered to him. Dr. Rosell also expressed concern that what some of the MSOTC staff interpreted as risk signs, such as asking if he could subscribe to a newspaper,[6] might well not be related to sex offender recidivism. In Dr. Rosell's opinion, Mr. Schottel's risk of re-offense was low at the time he stipulated to being an SVP, less than "more likely than not," and his risk at the time of deposition was even lower, less than six percent over five years.

The State presented contrary evidence from Dr. Jay Englehart, the medical director of MSOTC and a member of Mr. Schottel's treatment team. As a general proposition, Dr. Englehart stated that the MSOTC staff believed that the minimum amount of time to complete treatment is four and one half to five years, while the "optimal" number of years to complete the treatment is eight years, and having been in treatment for less than this time, Mr. Schottel was not ready for release. He also believed that Mr. Schottel did not have sufficient insight into his condition, did not accept the diagnosis of pedophilia as true, and had sufficient trouble following authority in treatment so that he might well have trouble conforming to the law if released.

Dr. Martha Bellew–Smith, the director of MSOTC, opposed release on similar grounds. She said Mr. Schottel is just in the first of four stages of treatment and that he has shown a lack of respect for authority through rule violations such as giving property to other residents, disobeying staff orders, and possession of contraband such as a long earphone wire and newspaper photographs. The State also presented evidence from his 2003 review showing lack of commitment to treatment.

Clearly, a question of fact was presented by this evidence as to whether Mr. Schot-

6. Mr. Schottel's desire to have a newspaper was interpreted by MSOTC staff as an attempt to learn about future victims; however, Dr. Rosell stated that many inmates request newspapers and he did not consider this to be a risk factor.

tel was still an SVP. At a hearing on the merits, a jury or judge may find that the State has proved beyond a reasonable doubt that he is. But, that is not the issue on this appeal. This appeal concerns whether Mr. Schottel has made an initial *probable cause* showing that he is no longer an SVP. While the State's experts thought he was still an SVP, whether or not they, rather than Mr. Schottel's experts, are correct presents a triable issue of fact. Mr. Schottel's showing, therefore, was sufficient to constitute the probable cause necessary to entitle him to a second merits hearing under section 632.498.

 Mr. Schottel analogizes the probable cause standard, in this civil context, to the summary judgment standard applied to decide whether a fact issue exists for trial in a civil case. As he notes, in determining a summary judgment motion, the judge similarly is not to decide what the facts are or to make credibility determinations, but simply to determine whether there is a triable issue of fact. This Court reviews the trial court's summary judgment decision *de novo*. *See ITT Comm'l Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 377–78, 382 (Mo. banc 1993).

Even more apt is Mr. Schottel's analogy of the probable cause standard under section 632.498 to that required to make a *prima facie* showing that a particular fact exists, sufficient to shift the burden of proof or raise an issue of fact in a civil context.[7] This is the approach taken by the Washington Supreme Court in *In re Detention of Petersen*, 145 Wash.2d 789, 42 P.3d 952 (2002), in interpreting the very similar "probable cause" standard set out in the 1995 version of their SVP statute, section 71.09.090(2). The 1995 Washington statute, like the Missouri statute at issue here, required a second hearing on whether the committed person is an SVP if the person made a probable cause showing at an initial hearing before the court, stating:

[t]he court shall set a show cause hearing to determine whether facts exist that warrant a hearing ... *If the court at the show cause hearing determines that probable cause exists to believe that the person's mental abnormality or personality disorder has so changed* that the person is not likely to engage in predatory acts of sexual violence if conditionally released to a less restrictive alternative or unconditionally discharged, *then the court shall set a hearing on the issue.*

Sec. 71.09.090(2) RSW 1995 (emphasis added).

*Petersen* analogized this probable cause standard to that used in determining the validity of a search under the Fourth Amendment, and then stated, "Probable cause exists if the proposition to be proven has been prima facie shown." *Petersen*, 42 P.3d at 957.[8] Such a showing could be

---

7. This Court notes that a probable cause standard is also applied in the civil context in malicious prosecution cases, although there the question is whether the plaintiff in a prior lawsuit lacked probable cause for initiating the prior civil action. In that context, probable cause constitutes "a belief in the facts alleged, based on sufficient circumstances to reasonably induce such belief by a person of ordinary prudence in the same situation, plus a reasonable belief by such person that under such facts the claim may be valid under the applicable law ... factual disputes are for the jury to decide." *Kelley v. Kelly Residential Group*, 945 S.W.2d 544, 549 (Mo.App.1997).

8. In some ways, *Petersen's* approach could be considered an even more difficult standard to meet than that in Missouri criminal cases involving issuance of a warrant, for in the latter cases, "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *State v. Hill*, 854 S.W.2d 814, 819 (Mo.App.E.D. 1993). This Court also notes that, because Washington courts have interpreted the

made if the petitioner presented evidence which, *if believed,* showed he no longer met the SVP definition. *Petersen* said that this meant that the trial judge was not to engage in credibility determinations at the probable cause hearing. If a prima facie showing was made, raising a triable issue of fact, then a second hearing was required. *Id.* Only at that second hearing would such credibility determinations be made.

The *Petersen* approach is the appropriate one for applying the "probable cause" standard set out in section 632.498. The trial court acts as a gatekeeper to determine whether a triable issue of fact has been raised by petitioner's evidence. If so, then the court must hold a second, evidentiary hearing. If no triable issue of fact is shown by the petitioner's evidence, then a further hearing is not required. In deciding whether a triable issue exists, the judge is not to engage in credibility determinations. If credibility or a weighing of evidence is required, then a triable issue exists and the court should set the evidentiary hearing provided for in the final clause of section 632.498. At that second hearing, which is held before either the judge or a jury as fact finder, the statute makes it the State's burden to prove beyond a reasonable doubt that petitioner's mental abnormality remains such that he is not safe to be at large and if released is likely to engage in acts of sexual violence. Sec. 632.498.

Mr. Schottel's experts clearly offered sufficient evidence to meet the probable cause standard and raise a triable issue on the question whether he is was more likely than not to engage in acts of sexual violence if released. It was incumbent upon the trial court not to make credibility de-

terminations or to weigh and balance this expert testimony with the evidence offered by the State, but rather to set the matter for the further hearing required by section 632.498. It did not do so. This was error.

The State suggests that, even were this Court to remand because Mr. Schottel's evidence met the "probable cause" standard required under section 632.498 at the time the court denied his petition, this Court should direct the court on remand to repeat the initial hearing rather than hold a second, evidentiary hearing. In support, the State notes that, while this case was on appeal, the legislature repealed the language in section 632.498 entitling the committed person to a further hearing upon a showing of probable cause and replaced it with language entitling the committed person to a further hearing only upon a showing by a "preponderance of the evidence" that the person is safe to be at large and will not re-offend if released.

The Court rejects this approach. Mr. Schottel met his burden at the initial hearing on his second petition for release, a hearing held under the 2000 version of section 632.498, and was thereby entitled to proceed to a second hearing on the merits of his petition. The fact that section 632.498 was later amended to change the burden of proof that Mr. Schottel may be required to meet in the future cannot affect the fact that he met his burden of proof and was entitled to a hearing on the merits of his October 2002 petition for release. Since he was incorrectly denied such a hearing, he is entitled to receive it on remand. At that hearing, "the burden of proof at the hearing shall be upon the state to prove beyond a reasonable doubt that the committed person's mental abnor-

---

Washington statute to place the burden of proof on the state to show lack of probable cause, *Petersen* also says the standard can be

met if the State fails to present proof that the person continues to be an SVP.

mality remains such that the person is not safe to be at large and if released is likely to engage in acts of sexual violence." Sec. 632.498.[9]

For the reasons set out above, the judgment is reversed, and the case is remanded.

WHITE, C.J., WOLFF, PRICE, TEITELMAN and LIMBAUGH, JJ., and BLACKMAR, Sr.J., concur.

RUSSELL, J., not participating.

---

**9.** This burden is the same under the 2000 statute and under the amended version of the statute enacted in 2004.