[No. 79331-0.   En Banc.]
Argued March 1, 2007.      Decided May 31, 2007.

*In the Matter of the Detention of* KEVIN AMBERS, *Petitioner.*

---

*Dennis P. Carroll* (of *Public Defender*), for petitioner.

*Daniel T. Satterberg, Acting Prosecuting Attorney for King County*, and *David J.W. Hackett, Deputy*, for respondent.

¶1 BRIDGE, J. — Kevin Ambers seeks review of a trial court order denying his petition for an unconditional release trial. In 1998, Ambers stipulated to commitment as a sexually violent predator (SVP). Ambers has been confined since then (although he was, for a short time, released to a less restrictive alternative (LRA)), and during his confinement he has participated in treatment. In 2005, pursuant to RCW 71.09.090(2)(a), Ambers petitioned for an unconditional release trial. He argues that because he has now made a prima facie showing that he no longer meets the initial commitment criteria for an SVP, the court must order a full trial on the issue of unconditional release. The State in turn argues that the 2005 amendments to the sexually violent predator act (Act), chapter 71.09 RCW,

require detainees to meet a more stringent standard when they present the testimony of their own experts in support of their contentions that they are entitled to unconditional release. We find that this is an incorrect interpretation of the Act and reverse the court below.

I

## Facts and Procedural History

¶2 In 1985, Ambers pleaded guilty to rape in the second degree and was sentenced to 21 months of confinement. After he was released from prison, Ambers committed two more rapes and robberies. He pleaded guilty to rape in the first degree, rape in the second degree, robbery in the first degree, and robbery in the second degree. The court sentenced him to 171 months of total confinement. On October 30, 1996, one day before Ambers was scheduled to be released from prison, the State filed a petition for commitment to the custody of the Department of Social and Health Services (DSHS). At his jury trial in the fall of 1997, the jury hung 10-2 in favor of commitment. In January 1998, Ambers stipulated to commitment as an SVP.

¶3 Since that time, Ambers has never had a trial to determine whether he still meets the definition of an SVP.[1] In 2005, Ambers requested an unconditional release trial pursuant to RCW 71.09.090. In support of this request, he submitted a report and declaration from Dr. Jeffrey Abracen, an expert in the field of sex offender treatment. Dr. Abracen asserted that, if released, Ambers had a 36 percent likelihood of reoffending sexually over a 15-year period. Ambers argued that this opinion constituted a prima facie showing that he no longer met the initial commitment criteria for an SVP, i.e., that he no longer "more probably than not" would reoffend if released, and thus the court was required to order a full jury trial.

---

[1] In 2003, in exchange for a conditional release to an LRA, Ambers stipulated that he still met the definition of an SVP. However, Ambers violated the terms of his conditional release, and in 2004 Ambers and the State agreed to a court order revoking the release.

¶4 The court agreed that the report constituted prima facie evidence of a change in condition but found that the 2005 amendments to the Act required an expert to determine whether a petitioner is " 'safe to be at large.' " Clerk's Papers (CP) at 488-90. The court found that this standard is more stringent than the " 'more [probably] than not' " standard used in the definition of an SVP. CP at 489. Because Dr. Abracen did not state that Ambers was safe to be at large, the court terminated the proceedings.

¶5 The trial court certified Ambers' appeal to the Court of Appeals, which subsequently certified the appeal to this court. We must now decide whether the trial court properly interpreted the 2005 amendments to the Act.

## II

### Analysis

¶6 *2005 Amendments*: The Act sets forth procedures by which the State may seek to have a person who has been convicted of a sexually violent crime committed indefinitely. *See generally* ch. 71.09 RCW. In order to obtain a commitment order, the State must prove that the subject of the proceeding is an SVP. *See* RCW 71.09.060(1). The Act defines an SVP as

> any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility.

RCW 71.09.020(16). The statute in turn defines " '[l]ikely to engage in predatory acts of sexual violence if not confined in a secure facility' " to mean that

> the person more probably than not will engage in such acts if released unconditionally from detention on the sexually violent predator petition.

RCW 71.09.020(7).

¶7 Each year, DSHS must examine the persons committed under the Act to determine whether they still meet the definition of an SVP and whether release to an LRA is appropriate. RCW 71.09.070. This report is served on the trial court that conducted the initial commitment proceeding, the committed person, and the prosecuting attorney. *Id.* If the secretary of DSHS determines that the condition of the committed person has so changed such that he or she no longer meets the definition of an SVP or transfer to an LRA is appropriate, the secretary must authorize the person to petition the court for unconditional release or transfer to an LRA. RCW 71.09.090(1). At the subsequent hearing, the State may challenge DSHS's recommendation. *See* RCW 71.09.090(3)(a). If the secretary does not recommend release or an LRA, the committed person may still petition the court. RCW 71.09.090(2)(a). The secretary must notify the person annually that he or she has the right to petition the court, and unless the committed person affirmatively waives this right, the trial court must conduct a show cause hearing. *Id.*

¶8 At the show cause hearing, the trial court must determine whether the petitioner is entitled to a full hearing on the issue of unconditional release or transfer to an LRA. The court must set a full hearing if it finds that

> (i) [t]he state has failed to present prima facie evidence that the committed person continues to meet the definition of a sexually violent predator and that no proposed less restrictive alternative is in the best interest of the person and conditions cannot be imposed that would adequately protect the community; or (ii) probable cause exists to believe that the person's condition has so changed that: (A) The person no longer meets the definition of a sexually violent predator; or (B) release to a proposed less restrictive alternative would be in the best interest of the person and conditions can be imposed that would adequately protect the community . . . .

RCW 71.09.090(2)(c). If the court grants a full hearing on the issue of unconditional release, the State has the burden

at that hearing of demonstrating by proof beyond a reasonable doubt that the committed person still meets the definition of an SVP. RCW 71.09.090(3)(b).

¶9 In 2004, Division One of the Washington Court of Appeals determined that where the committed person made a prima facie showing that he no longer met the definition of an SVP due to his advanced age, the petitioner was entitled to a full hearing. *In re Det. of Young*, 120 Wn. App. 753, 755, 86 P.3d 810 (2004). In that case, a qualified expert presented research at the show cause hearing demonstrating that as offenders age, their likelihood of recidivism upon release declines. *Id.* at 760-61. Therefore, the expert found, because of Young's age (61), he no longer met the definition of an SVP—i.e., he no longer "more probably than not" would commit a sexually violent act if released from confinement. *See id.* at 761. The trial court refused to allow a full trial based upon that evidence, finding that the report did not address Young's condition as a whole. *Id.* at 756.

¶10 The Court of Appeals reversed. The court noted that "[a]n annual show cause hearing is not the proper venue to challenge and weigh the evidence," and that "[b]ecause current risk assessment techniques suggest Young is not currently an SVP, denying him a hearing at this point raises due process concerns." *Id.* at 759, 763. Relying on that opinion, the same court decided less than a year later that where new diagnostic practices indicated that a person no longer met the definition of an SVP, such evidence constituted a prima facie showing requiring a full trial on the issue of commitment. *In re Det. of Ward*, 125 Wn. App. 381, 383, 104 P.3d 747 (2005). In *Ward*, the trial court had refused to grant a full trial, finding that new diagnostic procedures alone did not constitute the change in condition contemplated by RCW 71.09.090. *Id.* at 385. The Court of Appeals disagreed, again noting constitutional concerns with refusing the petitioner's request for a trial. The court stated that "[i]f a detainee provides new evidence establishing probable cause that he is not currently a sexually

violent predator, due process requires a trial on the merits, regardless of whether his evidence could have also challenged the basis of his original commitment." *Id.* at 386.

¶11 The legislature was displeased. It noted that *Young* and *Ward* were "contrary to [its] intent set forth in RCW 71.09.010 that civil commitment pursuant to chapter 71.09 RCW address the 'very long-term' needs of the sexually violent predator population for treatment and the equally long-term needs of the community for protection from these offenders." LAWS OF 2005, ch. 344, § 1. It stated that "the mental abnormalities and personality disorders that make a person subject to commitment under chapter 71.09 RCW are severe and chronic and do not remit due solely to advancing age or changes in other demographic factors." *Id.* Therefore, it sought to "clarify the 'so changed' standard." *Id.*

¶12 In this vein, the legislature added a new subsection to RCW 71.09.090, which provides:

> (4)(a) Probable cause exists to believe that a person's condition has "so changed," under subsection (2) of this section, only when evidence exists, since the person's last commitment trial proceeding, of a substantial change in the person's physical or mental condition such that the person . . . no longer meets the definition of a sexually violent predator . . . .
>
> (b) A new trial proceeding under subsection (3) of this section may be ordered, or held, only when there is current evidence from a licensed professional of one of the following and the evidence presents a change in condition since the person's last commitment trial proceeding:
>
> . . . .
>
> (ii) A change in the person's mental condition brought about through positive response to continuing participation in treatment which indicates that the person meets the standard for conditional release to a less restrictive alternative or that the person would be *safe to be at large* if unconditionally released from confinement.

(Emphasis added.) The legislature reiterated that a change in a single demographic factor is insufficient to establish probable cause for a full hearing. RCW 71.09.090(4)(c).

¶13 On January 19, 2006, Ambers' show cause hearing was held. In support of his request for an unconditional release trial, Ambers presented a report from Dr. Abracen in which he stated that Ambers' condition had so changed due to extensive treatment such that he no longer met the definition of an SVP. Dr. Abracen found that Ambers' chance of reoffending sexually over a 15-year period was 36 percent. Therefore, because this was well below the "more probably than not" standard required for the definition of an SVP, Ambers argued he was entitled to a full trial.

¶14 The court agreed that Dr. Abracen's report constituted prima facie evidence that Ambers would not "more probably than not" reoffend if released. CP at 488-89. However, the court went on to find that the new "safe to be at large" language in the statute constituted a more stringent standard. CP at 488-89. Therefore, because Dr. Abracen did not find that Ambers would be "safe to be at large,"[2] the court terminated the proceedings. CP at 489-90.

¶15 Ambers argues that the trial court misinterpreted RCW 71.09.090(4) and that the "safe to be at large" language simply means that the detainee no longer meets the definition of an SVP. *See* Appellant's Opening Br. at 15. The State in turn replies that "safe to be at large" is plain on its face and requires a more stringent standard for a detainee to meet. The State argues that the legislature included this language as a way to prevent unconditional release trials anytime a petitioner is "able to hire an expert willing to opine" that he or she is not an SVP. State's Resp. Br. at 9, 21.

¶16 Where statutory language is plain on its face, we do not "construe" its meaning. *King County v. Taxpayers of King County*, 104 Wn.2d 1, 5, 700 P.2d 1143 (1985). The State argues that the meaning of "safe to be at large" is plain and that we therefore need not " 'interpret' " this

---

[2] We note that a tenet of the Association for the Treatment of Sexual Abusers (ATSA) *Practice Standards and Guidelines* is that "[m]embers do not make statements asserting that a client is no longer at any risk to reoffend." ATSA, PRACTICE STANDARDS AND GUIDELINES 30.01 (2005).

language. State's Resp. Br. at 21. The State argues that the ordinary meaning of " 'safe' " is " 'freed from harm or risk . . . secure from threat of danger, harm, or loss.' " State's Resp. Br. at 22 (quoting WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1036 (1991)). Such definition implies that the person would pose no risk to the community if released. Yet, at the annual review hearing, the State asserted, "I don't think safe-to-be-at-large means zero. It probably means something in the single digits . . . ." Proceedings at 32. The State itself does not seem to know what "safe to be at large" means. We therefore reject the State's argument that the meaning of "safe to be at large" is plain.[3]

¶17 Because we find that "safe to be at large" is ambiguous, we must determine its meaning. We must interpret statutes in such a way as to give effect to all language used, rendering no part superfluous. *State v. Young*, 125 Wn.2d 688, 696, 888 P.2d 142 (1995); *Xieng v. Peoples Nat'l Bank of Wash.*, 120 Wn.2d 512, 529-30, 844 P.2d 389 (1993). Ambers argues that to construe "safe to be at large" as requiring a more stringent standard would conflict with other portions of the statute. Appellant's Opening Br. at 16-17. We agree. Numerous other provisions of the annual review statute incorporate the definition of an SVP as the relevant standard for determining whether or not to grant a full trial. *See* RCW 71.09.070, .090(1)(a), (2)(a), (b), (c)(ii), (3)(b), (4)(a). To read RCW 71.09.090(4)(b) as establishing a different standard would render it directly in conflict with other provisions of the statute. For example, RCW 71.09.090(2)(c) states that the court *must* order a full trial where probable cause exists to believe that the person's condition has so changed such that he or she no longer meets the definition of an SVP. Yet, RCW 71.09.090(4)(b)(ii) states that the court may order a trial *only when* there is evidence that the person is "safe to be at large." These two

---

[3] Ambers notes that this language is also ambiguous in that it does not indicate whether "safe" is in reference only to sexual offenses or whether it includes *any* risk to the community that a person's release might present. Appellant's Reply Br. at 7.

provisions are in conflict if we find that "safe to be at large" means something different from the definition of an SVP.[4]

¶18 The State attempts to get around this potential conflict by arguing that the "safe to be at large" language of RCW 71.09.090(4)(b)(ii) applies only to the detainee's evidence. State's Resp. Br. at 19 n.9. The State argues that the legislature's primary concern in "amend[ing]" RCW 71.09-.090 was to ensure that a detainee would not receive an unconditional release or an LRA trial simply because he or she found an expert who was willing to disagree with DSHS's annual report.[5] Id. at 19. Thus, the State argues, the legislature intended to establish a more stringent standard for detainees to meet. Id. at 24.

¶19 We first note that the plain language of the statute in no way indicates that RCW 71.09.090(4)(b) was meant to apply only to the detainee. The provision states that the court may order a new trial only when "there is current evidence from a licensed professional." RCW 71.09-.090(4)(b) (emphasis added); cf., e.g., RCW 71.09.090(2)(b) (requiring the prosecuting attorney or attorney general specifically to present prima facie evidence). However, the State argues that the structure of RCW 71.09.090 indicates that subsection (4) applies only to the detainee—this subsection applies to evidence suggesting that the person has

[4] Additionally, if we find that the "safe to be at large" provision requires a more stringent standard at an annual review hearing than is required for initial commitment, then the statute might be unconstitutional. See O'Connor v. Donaldson, 422 U.S. 563, 574-75, 95 S. Ct. 2486, 45 L. Ed. 2d 396 (1975) (finding that once the original basis for the detainee's commitment no longer existed, continuing confinement would be unconstitutional). "[W]here a statute is susceptible to an interpretation that may render it unconstitutional, courts should adopt, if possible, a construction that will uphold its constitutionality." In re Det. of C.W., 147 Wn.2d 259, 277, 53 P.3d 979 (2002).

[5] We note that the mere fact of an expert disagreeing with the DSHS report would not automatically result in a full trial. Although the court may not weigh evidence, it does have the discretion to determine whether a witness qualifies as an expert and whether his or her testimony would be helpful to the trier of fact. See In re Pers. Restraint of Young, 122 Wn.2d 1, 57, 857 P.2d 989 (1993) ("The determination of whether expert testimony is admissible is within the discretion of the trial court."). Additionally, new scientific evidence is subject to the Frye test for admissibility. See, e.g., State v. Gregory, 158 Wn.2d 759, 829, 147 P.3d 1201 (2006); Frye v. United States, 54 App. D.C. 46, 293 F. 1013 (1923).

"so changed," which is the petitioner's portion of the annual review hearing. State's Resp. Br. at 19 n.9. Yet, if we construe subsection (4) as the State suggests, it is internally inconsistent. Subsection (4)(a) states that

> [p]*robable cause exists* to believe that a person's condition has "so changed," under subsection (2) of [RCW 71.09.090], only when evidence exists . . . that the person . . . *no longer meets the definition of a sexually violent predator* . . . .

(Emphasis added.) Subsection (4)(b)(ii) then states:

> A *new trial proceeding* . . . may be ordered, or held, *only when* there is current evidence from a licensed professional . . . that the person would be *safe to be at large* if unconditionally released from commitment.

(Emphasis added.) Under the State's interpretation, subsection (4)(a) of the statute would be meaningless. RCW 71.09.090(2)(c) states that the court *must* order a full trial when it finds that the petitioner has met the probable cause standard. Subsection (4)(a) then expressly states that the probable cause standard is met when there is evidence that the petitioner "no longer meets the definition of a sexually violent predator." Yet, the State argues that subsection (4)(b) requires a petitioner to meet a more stringent standard in order to be entitled to a full trial. The State's interpretation would directly conflict with subsection (4)(a), rendering that provision inoperable.

¶20 Nor is the State's argument supported by the legislative history. Senate Bill 5582 states that the revisions to RCW 71.09.090 were in response to *Young* and *Ward*, in which the Court of Appeals had relied on evidence of a change in a single demographic factor or assessment methods to find prima facie evidence that the detainee no longer met the definition of an SVP. LAWS OF 2005, ch. 344, § 1. The legislature noted that this conflicted with the purpose of RCW 71.09.090, which is to require extensive treatment before committed persons may be released. *Id.* The findings expressly state that the legislature intended "to *clarify* the 'so changed' standard." *Id.* (emphasis added); *see also In re*

*Det. of Elmore*, 134 Wn. App. 402, 413, 139 P.3d 1140 (2006) ("We . . . read these recent statutory amendments as a clarification of the legislature's intent and *not as a substantive change in the law.*" (emphasis added)). The findings also note that "a committed person may appropriately challenge whether he or she continues to meet the criteria for commitment." LAWS OF 2005, ch. 344, § 1.

¶21 The reports of the House and Senate reinforce the notion that Senate Bill 5582 was intended to provide clarification, and not to require a more stringent standard for detainee evidence. The description of the bill in both reports is: *"Clarifying* how demographic factors are used with regard to sexually violent predators." CP at 315, 318 (emphasis added). The *Final Bill Report* states that "[a] showing that a person has 'so changed' requires a showing that . . . the person no longer meets the commitment standard . . . ." CP at 315. The *House Bill Report* expressly states that this standard applies when the detainee presents evidence:

> Probable cause that a detainee's condition has "so changed" such that he or she no longer meets the definition of a sexually violent predator, is established when *a detainee shows that,* since his or her last commitment proceeding, there has been a substantial change in his or her physical or mental condition that indicates either: (a) that the person *no longer meets the commitment standard*; or (b) that conditional release to a less restrictive alternative is in the person's best interest and conditions can be imposed that adequately protect the community.

CP at 321 (emphasis omitted and added). The legislature has evinced its intent to clarify RCW 71.09.090, not to substantively change it.

¶22 The Supreme Court of Missouri addressed the nearly identical issue in 2005. In *Schottel v. State*, 159 S.W.3d 836 (Mo. 2005), a person designated as an SVP challenged a provision of Missouri's sexually violent predator act, similar to Washington's Act. *Id.* at 844. Missouri's Act defines an SVP as "a 'person who suffers from a mental

abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined . . . .' " *Id.* at 842 n.5 (alteration in original) (quoting Mo. REV. STAT. § 632.480.5 (2000)). Under Missouri's Act, if the director of the Department of Mental Health determines that a detainee is no longer likely to commit acts of sexual violence if released, the director must authorize the detainee to petition for release. *Id.* at 839. The court then holds a hearing at which the State has the burden of demonstrating that the detainee is " 'not safe to be at large and that if discharged is *likely* to commit acts of sexual violence.' " *Id.* (emphasis added) (quoting Mo. REV. STAT. § 632.501 (2000)). If the director does not find that the detainee's condition has changed, the detainee may still petition the court but must make a prima facie showing at the preliminary hearing that he or she is " 'safe to be at large and *will not* engage in acts of sexual violence if discharged.' " *Id.* (emphasis added) (quoting Mo. REV. STAT. § 632.498 (2000)). In *Schottel,* the trial court had found that Schottel did not meet this burden at the probable cause hearing. *Id.* at 838. On appeal, Schottel argued that the Missouri statute was unconstitutional because it imposed upon him a higher burden to get an evidentiary hearing than the State had to meet and than was required at the initial commitment hearing. *Id.* at 840.

¶23 The State argued that Schottel's interpretation was "an obvious attempt to interpret the statute in a way that makes it unconstitutional." *Id.* at 842. It said that "[t]o suggest that the legislature intended to create such a variety of risk levels when it used the terms probable cause to believe the person 'will not' and 'likely' strains credulity." *Id.* The Missouri court agreed. It found that the legislature had used the words "will not" "merely to constitute a shorthand way of referring to the requirement that the petitioner must make a preliminary showing that he is not likely to engage in further acts of sexual violence, without restating the longer and more awkward description of an SVP contained in [the statute]." *Id.* at 842.

¶24 We find that our legislature had a similar intent. Viewing RCW 71.09.090 as a whole, it becomes clear that the legislature used "safe to be at large" as shorthand for the more awkward SVP definition and did not intend to create a variety of risk levels. To find that subsection (4)(b)(ii) imposes a more stringent standard would render this provision inconsistent with the rest of the statute and would make subsection (4) internally inconsistent. Therefore, we find that "safe to be at large" references the definition of an SVP as expressed in RCW 71.09.020(16) (defining " '[s]exually violent predator' ") and .020(7) (defining "[l]ikely to engage in predatory acts of sexual violence if not confined in a secure facility"). Because we find that this is so, we need not determine the constitutionality of imposing a more stringent standard for a detainee to meet at a show cause hearing.

¶25 *Treatment-Based Change*: Having determined the appropriate standard by which evidence in a show cause hearing should be judged, we turn to whether Ambers met his burden of demonstrating that his condition has so changed due to a continuing course of treatment. *See* RCW 71.09.090(4)(b)(ii). We review de novo whether evidence meets the probable cause standard. *In re Det. of Petersen*, 145 Wn.2d 789, 799, 42 P.3d 952 (2002). To meet this standard, the petitioner must make a prima facie showing, presenting facts which, if believed, warrant further proceedings. *See id.* at 798. RCW 71.09.090(4)(b)(ii) requires a showing by a licensed professional that the petitioner's condition has changed due to a continuing course of treatment, such that he no longer meets the initial commitment criteria.

¶26 The State argues that because Dr. Abracen failed to find a treatment-based change in Ambers,[6] and because Dr.

---

[6] The State argues that the relevant time period in which Ambers must demonstrate a significant change in condition is from his stipulation in May 2003. State's Resp. Br. at 45-46. Ambers notes that the State raised this issue for the first time on appeal. Appellant's Reply Br. at 33. The State did not previously argue that the court should measure Ambers' change in condition from the date of

Abracen failed to opine to the "safe to be at large" standard, Ambers failed to make a prima facie showing. State's Resp. Br. at 45, 48. Because we have concluded that "safe to be at large" does not impose a more stringent standard, we must decide only whether Ambers sufficiently demonstrated a change in his condition such that he no longer meets the definition of an SVP.

¶27 The State argues that Dr. Abracen based his conclusion upon actuarial tables that, if used when Ambers was originally committed, would indicate that he was not an SVP at that time. *Id.* at 46. Therefore, the State asserts, Ambers has not demonstrated a change in condition due to *treatment*, as required by RCW 71.09.090(4)(b)(ii). *See id.* at 46-47. Ambers contends that while Dr. Abracen did refer to new risk assessment methods in his deposition, he did so "in the context of a lengthy discussion regarding one part of his assessment that included actuarial tools and other dynamic factors." Appellant's Reply Br. at 28. Ambers argues that this deposition "must be viewed in light of his report where he unequivocally stated that Mr. Ambers' condition has changed <u>because of treatment</u> such that he is no longer a sexually violent predator." *Id.* at 29.

¶28 In his report and deposition, Dr. Abracen discussed the treatment Ambers received while incarcerated and discussed how this treatment has been beneficial to Ambers. *E.g.*, CP at 201 ("A review of Mr. Ambers' clinical record indicates that, though lapses are clearly indicated, he has benefited from treatment."); CP at 465 ("Mr. Ambers'

the 2003 stipulation—before the trial court it in fact referred to the relevant time frame as 1998 through 2006. CP at 290 ("Dr. Abracen's opinion cannot establish a 'substantial change' in Mr. Amber's [sic] physical or mental condition since the 1998 civil commitment . . . ." (emphasis omitted)); Proceedings at 12 ("Dr. Abracen's opinion doesn't show a change from 1998 to 2006."). "Failure to raise an issue before the trial court generally precludes a party from raising it on appeal." *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983). Although we may address the issue if we so choose, "we are not bound to do so and usually refuse." *Id.* at 38. Here, because the State did not previously raise this issue, Ambers did not have the opportunity to develop the record on whether his condition had changed between 2003 and 2006 specifically. Therefore, we find that the State waived this argument by failing to raise it below and address only whether Ambers demonstrated a change from the time of his initial commitment.

risk has been reduced since [he was committed] as a result of having been involved in treatment for quite a number of years."). He then stated that Ambers' risk of sexual recidivism over a 15-year period is 36 percent. CP at 205. Dr. Abracen concluded:

> It is my opinion, to a reasonable degree of scientific certainty that Mr. Ambers' condition has changed since his commitment in 1998 such that he no longer meets the definition of a sexually violent predator. The change in Mr. Ambers' condition has been brought about through positive responses to continuing participation in treatment that indicates that he no longer meets the criteria of a sexually violent predator. New developments in actuarial assessments since his commitment further reinforce these opinions.

CP at 215. Because Dr. Abracen indicated Ambers no longer meets the definition of an SVP, and because he stated that this change was due to treatment, we hold that Ambers made the requisite prima facie showing. We therefore remand to superior court to conduct a full hearing on the question of unconditional release.[7]

### III

### Conclusion

¶29 We find that the 2005 amendments to the Act do not impose a more stringent standard for a detainee, seeking unconditional release, to meet at an SVP hearing. The standard continues to be that the detainee must show that he or she no longer meets the definition of an SVP and that this change has come about through continuing participation in treatment. Here Ambers has made this prima facie

---

[7] Because we find that Ambers has made a prima facie showing based upon a continuing course of treatment, we need not decide whether the 2005 amendments to RCW 71.09.090 are unconstitutional insofar as they prohibit a detainee from challenging his commitment on a basis other than a change in condition due to treatment or a physiological change. We emphasize that our ruling here will not automatically result in Ambers' release—it merely gives him the opportunity to have a jury determine whether he still meets the initial commitment criteria for an SVP.

showing, and thus he is entitled to a full trial on the issue of unconditional release. We therefore remand the case to the trial court for further proceedings consistent with this opinion.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.