**In the Matter of the Care and Treatment of Lou R. MARTINEAU, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 27928.**

Missouri Court of Appeals, Southern District, Division One.

Nov. 13, 2007.

Petition for Rehearing or Reconsideration and Transfer Denied Dec. 3, 2007.

Application for Transfer Denied Jan. 22, 2008.

Emmett D. Queener, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Alana M. Barragan–Scott, Office of Atty. Gen., Jefferson City, for Respondent.

DANIEL E. SCOTT, Judge.

Lou R. Martineau appeals his civil commitment under the sexually violent predator ("SVP") law, RSMo §§ 632.480–.513.[1] He challenges the sufficiency of the evidence at trial and at his probable cause hearing.

### Procedural Background

Martineau was convicted and imprisoned in 1993 for sodomizing a mentally retarded boy. *State v. Martineau,* 932 S.W.2d 829 (Mo.App.1996). As Martineau's release date approached, a multidisciplinary team determined that he appeared to be a SVP, and a prosecutor's review committee agreed.[2] Based on these findings, and incorporating them into its petition, the State sought Martineau's commitment as a SVP.

The probate court held a section 632.489 probable cause hearing in September 2005, and by agreement, left the record open for additional evidence. The court resumed the hearing on December 9, 2005 and issued a probable cause order. At Marti-

---

1. Statutory references are to RSMo (2000), unless otherwise indicated.

2. Section 632.483 provides for these two bodies and their actions.

neau's May 2006 trial on the merits, the jury unanimously adjudged him a SVP beyond a reasonable doubt. He was committed to the Department of Mental Health until he is safe to be at large.

## Sufficiency of Evidence at Trial

■ The State's two-pronged burden at trial was to prove beyond a reasonable doubt[3] that Martineau (1) has a congenital or acquired condition affecting his emotional or volitional capacity that predisposes him to commit sexually violent offenses to a degree that causes him serious difficulty controlling his behavior; and (2) is more likely than not to engage in predatory acts of sexual violence if not confined. *In re Care and Treatment of Spencer,* 171 S.W.3d 813, 816 (Mo.App.2005).

Martineau's claim is a narrow one. He contends the evidence of his danger to others predated his imprisonment since 1993, and thus insufficiently proved he *"presently* suffers a qualifying mental condition" (emphasis ours). Yet, even Martineau's experts agreed that his pedophilia currently predisposes him to commit sexually violent offenses to a degree that causes him serious difficulty controlling his behavior. Proof of Martineau's prong 1 mental abnormality was, in fact, uncontroverted. Therefore, we consider his already narrow claim further limited to prong 2's likelihood of re-offense.

In evaluating this evidence, we use the same evidentiary standard as in criminal cases. *Spencer,* 171 S.W.3d at 816, *citing In re Care and Treatment of Amonette,* 98 S.W.3d 593, 600 (Mo.App.2003). Thus, we consider whether the evidence was sufficient to persuade twelve reasonable jurors beyond a reasonable doubt of Martineau's likelihood to re-offend unless confined. *Spencer,* 171 S.W.3d at 816. We will reverse only if there is a "complete absence of probative fact" in support of the jury's conclusion. *Id.* We view the evidence most favorably to the jury verdict, and disregard all contrary evidence and inferences. *Id.See also Smith v. State,* 148 S.W.3d 330, 335 (Mo.App.2004).

Viewing the evidence accordingly, and without belaboring his sexual deviancy, Martineau molested at least eight boys in the ten years before his imprisonment. He started molesting five-year-old Craig[4] in Rhode Island, then followed Craig's family's move to California to continue molesting the child there. He molested Craig about 100 times. He also molested Craig's brother. Martineau's other victims were boys from four to 14 years old. He molested them, in many cases, 10–15 times. Sometimes he plied his young victims with alcohol to break down their inhibitions. Virtually all such evidence of Martineau's sexual history was admitted without objection.

Based on this and other evidence, Dr. Kent Franks testified that Martineau is more likely than not to engage in predatory acts of sexual violence if not confined to a secure facility, and that he is a SVP. Again, these opinions and the whole of Dr. Franks' testimony were admitted with no objection pertaining to this appeal point.

---

**3.** When Martineau was tried, the SVP law used a reasonable doubt standard that apparently exceeded constitutional due process requirements. *See Addington v. Texas,* 441 U.S. 418, 427–31, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)(federal constitution requires clear and convincing evidence for civil commitment); *Doe v. Phillips,* 194 S.W.3d 833, 841 (Mo. banc 2006)(Missouri and federal due process clauses are co-extensive). The standard has since been amended to "clear and convincing evidence." §§ 632.495, 632.498 (2006 Supp.)

**4.** Craig, now an adult, testified in person at trial.

Significant to Dr. Franks' prong 2 opinion was that Martineau had eight other victims for which he was never charged or convicted, as well as his deviant sexual preference. According to Dr. Franks, research clearly shows that unmarried homosexual pedophiles like Martineau, who target non-family male victims, are much more likely to re-offend than other sexual offenders. Indeed, they are at the highest risk to re-offend, with research indicating re-offense rates from 52% to 77%. There also was the predatory nature of Martineau's behavior—his sophistication in selecting targets; befriending their families; and "grooming" his victims by building relationships with them and gaining their trust, then setting up situations where he could molest them. Furthermore, Martineau continued to act upon his deeply-ingrained sexual deviancy, even to the extent of crossing state lines and in spite of detection.

Dr. Franks testified that Martineau suffers "very—extremely severe pedophilia." His completion of a nine-month treatment program in prison does not mean he is unlikely to re-offend; "he requires much more intensive treatment than he has received to date."

Dr. Franks' testimony was supported in several respects by Martineau's own expert, Dr. Anna Salter, the author of several books on this subject. Dr. Salter told the jury that she noted in her book, TREATING CHILD SEX OFFENDERS AND VICTIMS, that "[o]ffenders will ordinarily be in treatment for two years or more." She also read the jury two passages from her latest book, PREDATORS, PEDOPHILES, RAPISTS AND OTHER SEX OFFENDERS, in which she observed that:

> 60 out of 100 sex offenders would still re-offend after the most effective treatment available today, and that means we're a long way from curing pedophilia

or rape. Note also, these results are for the short run. No one really knows the impact of treatment in the long run.

and

> The Canadian research of Karl Hanson found that those offenders that were never married, had boy victims, that had previous offenses, demonstrated a detected re-offense rate of 77 percent in the long run. Any group with a detected rate of re-offense that high means that virtually all offenders in those groups are likely to re-offend, given what we know about undetected offenses.

We need not further recount or detail the evidence on this point. Viewing the record favorably to the verdict, there was not a "complete absence of probative fact" to support the jury's finding that Martineau is a SVP, nor was the evidence insufficient to so persuade twelve reasonable jurors. *Spencer,* 171 S.W.3d at 816.

In *Spencer,* the defendant similarly alleged "the State did not prove his diagnosed pedophilia created a current danger that he would engage in predatory acts of sexual violence." 171 S.W.3d at 819. There was little or no expert dispute that Spencer suffered pedophilia, and no one testified it was in remission or had gone away while he was in prison. *Id.* at 820. The expert dispute was the defendant's likelihood to re-offend, and as here, "[i]t was within the jury's domain to make a credibility determination as to whose expert testimony it chose to believe." *Id.* The mere fact that an incarcerated defendant cannot access children to molest does not logically establish his unlikelihood to resume such behavior if released. *Id.* We reject Martineau's challenge to the sufficiency of the trial evidence.

## Sufficiency of Probable Cause Evidence

Martineau also claims the December 2005 probable cause finding was based on insufficient evidence, and thus violated his due process rights.

■ Although the SVP law is civil in nature,[5] its elaborate, step-by-step procedure provides many of the rights enjoyed by criminal defendants. *In re Care and Treatment of Norton,* 123 S.W.3d 170, 174–75 (Mo. banc 2003). This includes a right to the probate judge's preliminary determination whether probable cause exists to believe the suspected predator is a SVP. *Id.* at 174. Yet, even in a criminal proceeding, "[a] defendant's substantive rights are not affected by a preliminary hearing. In fact, such a hearing is not even a part of the constitutional right to due process." *State v. Blackmon,* 664 S.W.2d 644, 649 (Mo.App.1984). *See also State v. Aaron,* 218 S.W.3d 501, 509 (Mo.App.2007); *State v. Menteer,* 845 S.W.2d 581, 584 (Mo.App. 1992).

■ Moreover, while the SVP law does not define "probable cause," it seems well-settled that the trial court does not weigh evidence or make credibility determinations at preliminary hearings thereunder. *See In re Care and Treatment of Coffman,* 225 S.W.3d 439, 444 (Mo. banc 2007); *Care and Treatment of Schottel v. State,* 159 S.W.3d 836, 845 (Mo.2005).[6] Rather, the court acts as a gatekeeper merely to determine if the State's evidence raises a triable issue of fact. *Schottel,* 159 S.W.3d at 845. The jury's finding that Martineau is a SVP "beyond a reasonable doubt" arguably subsumes "probable cause" in this context.

The crux of Martineau's complaints is that two experts testified at the probable cause hearing, and both said Martineau was not a SVP. Even without expert testimony, the petition's allegations can establish probable cause, at least when—as here—the allegations were not denied and supporting documentary evidence was admitted at the hearing. *Amonette,* 98 S.W.3d at 599–600; § 632.489.2(2). Martineau recognizes this, and further concedes that the probate judge is the sole judge of the sufficiency of the evidence as to probable cause. *Amonette,* 98 S.W.3d at 599. He argues, however, that the evidence at his probable cause hearing "was not at all of the same quality as that before the court in *Amonette.*" This ignores *Schottel* and the trial court's limited "gatekeeper" role at the probable cause hearing, which is not to weigh the evidence presented, but merely determine if a triable issue has been raised. 159 S.W.3d at 845. Here, the petition's allegations, and the attached multidisciplinary team and prosecutor's review committee reports admitted at the probable cause hearing, raised a triable issue whether Martineau was a SVP. Contrary to Martineau's argument, therefore, "[i]t was incumbent upon the trial court not to make credibility determinations or to weigh and balance [the] expert testimony with the evidence offered by the State, but rather to set the matter for the further hearing required." *Id.* (regarding probable cause hearings and trials under then-current section 632.498). For each and all of these reasons, Martineau has not persuaded us that his due process rights were violated with respect to the probable cause hearing.

---

**5.** *Elliott v. State,* 215 S.W.3d 88, 93 (Mo. banc 2007).

**6.** Although these cases involved section 632.498 preliminary hearings, there is no suggestion that their probable cause pronouncements do not apply equally to other SVP preliminary hearings, nor do we so conclude.

## Conclusion

We affirm the judgment.

PARRISH, P.J., and BATES, J., concur.