168 P.3d 1285 (2007)
In the Matter of the DETENTION OF Keith W. ELMORE, Petitioner.
No. 79208-9.
Supreme Court of Washington, En Banc.
Argued May 10, 2007.
Decided October 18, 2007.
*1286 David Schultz, Attorney at Law, Camas, WA, for Petitioner.
Todd Richard Bowers, Attorney General-CJD, Seattle, WA, Jeffrey Todd Even, Office of The Attorney General, Olympia, WA, for Respondent.
OWENS, J.
¶ 1 Petitioner Keith W. Elmore is civilly committed in the Special Commitment Center (SCC) as a sexually violent predator (SVP) under the sexually violent predator act (SVPA), chapter 71.09 RCW. Elmore appeals a Court of Appeals decision holding that he is not entitled to an evidentiary hearing to determine whether his commitment remains valid. We hold that Elmore is entitled to a full hearing regarding the validity of his continued confinement.

FACTS
¶ 2 In October 1994, Elmore pleaded guilty to kidnapping and assault in the second degree with sexual motivation and in February 1995, stipulated to an exceptional sentence of 60 months of total confinement.[1] In 1999, the State petitioned to have Elmore civilly committed as an SVP at the end of his sentence. In 2001, the parties stipulated to Elmore's commitment and submitted a report by an SCC psychologist as the factual basis for the commitment.[2] Clerk's Papers *1287 (CP) at 1-7. The Clark County Superior Court ruled that Elmore was an SVP and committed him to the SCC.
¶ 3 On March 17, 2004, the superior court conducted a show cause hearing to determine whether Elmore continued to meet the criteria for commitment. The State presented written reports from Dr. Jason Dunham, an SCC employee, indicating that Elmore continued to meet the definition of an SVP. Verbatim Report of Proceedings at 4. Based on the written reports, the trial court determined that the State met its initial burden of presenting prima facie evidence that Elmore continued to meet the criteria for confinement as an SVP. CP at 277-80.
¶ 4 The trial court then reviewed Elmore's evidence to determine whether his evidence constituted probable cause to hold a full trial on his continued confinement. Elmore presented a 2003 evaluation by Dr. Richard Wollert.[3] In the 2003 report, Dr. Wollert opined that Elmore was no longer an SVP for four reasons. First, Dr. Wollert stated that Elmore had completed the equivalent of a residential treatment program. CP at 265-66. According to Dr. Wollert, Elmore's previous 15-month participation in a sex offender treatment program while incarcerated and his additional advancement in the SCC's treatment program were sufficient "to regard her as having finished residential treatment."[4]Id. Second, Dr. Wollert concluded that Elmore's diagnosis of sexual sadism and personality disorder were inappropriate. Id. at 266. Dr. Wollert reached this conclusion after reviewing data from the SCC clinical file and other sources that revealed that the "diagnoses [were] either no longer applicable or need[ed] to be qualified." Id. Third, Dr. Wollert stated that new studies suggested that Elmore's low scores on actuarial prediction tests were more relevant and accurate than previously believed. Thus, Dr. Wollert opined that Elmore was ineligible for continued commitment because "her actuarially-determined recidivism risk does not exceed the relevant standard." Id. at 269. Finally, Dr. Wollert concluded that Elmore's increase in age resulted in recidivism risk of only nine percent"well below the commitment standard." Id. at 269-70.
¶ 5 The trial court rejected Dr. Wollert's first three opinions. As to Dr. Wollert's first opinion that Elmore had completed the equivalent of residential treatment, the trial court concluded it was "insufficient . . . where the staff at the [SCC] are of the opposite opinion" and "unsupported by relevant evidence." Id. at 279. The court further held that Dr. Wollert's opinion that Elmore did not suffer from sexual sadism or personality disorder was inadequate because Dr. Wollert simply believed the diagnoses were wrong at the time of commitment and Dr. Wollert presented no evidence of change. Id. at 279-80. The trial court likewise rejected Dr. Wollert's third opinion that Elmore's scores on actuarial tests should be considered more accurate than previously thought, noting that Elmore's actual scores had not changed since his original commitment. Id. at 280. Despite its rejection of Dr. Wollert's three opinions, the trial court determined that Elmore's advance in age constituted a change establishing probable cause to believe that Elmore no longer constituted an SVP. Id. at 280-81. The court thus granted Elmore an evidentiary hearing to examine the sole issue of whether Elmore remained an SVP in light of his advancing age.
¶ 6 The State appealed and argued that the trial court erred in granting the evidentiary hearing on the issue of age. Elmore cross-appealed, arguing that the trial court erred in limiting the hearing to the issue of age and excluding his other arguments and testimony from his expert witness. The Court of Appeals held that Elmore is not entitled to an evidentiary hearing to determine the validity of his continued confinement under RCW 71.09.090. In re Det. of *1288 Elmore, 134 Wash.App. 402, 139 P.3d 1140 (2006). We granted Elmore's petition for review. In re Det. of Elmore, noted at 158 Wash.2d 1025, 152 P.3d 347 (2007).

ISSUES
¶ 7 A. Does the 2005 amendment to the SVPA apply retroactively to Elmore?
¶ 8 B. Has Elmore made the requisite showing that he is entitled to a full hearing on the issue of unconditional release?

ANALYSIS
A. 2005 SVPA Amendment
¶ 9 Under the SVPA, the State may petition a court to civilly commit an inmate convicted of a sexually violent crime. See ch. 71.09 RCW. To do so, the State must establish that the inmate is an SVPa person convicted or charged with a sexually violent crime "who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.060(1), .020(16). Although commitment under the SVPA is indefinite in nature, committed persons such as Elmore have the right to an annual review of their commitment and may petition the court for conditional release to a less restrictive alternative or an unconditional discharge under RCW 71.09.090. After receiving such a petition, the trial court must hold a show cause hearing where the State bears the burden of presenting "prima facie evidence establishing that the committed person continues to meet the definition of [an SVP]." RCW 71.09.090(2)(b); accord In re Det. of Petersen, 145 Wash.2d 789, 798, 42 P.3d 952 (2002). The committed person may then present evidence establishing that "probable cause exists to believe that the person's condition has so changed that: (A) The person no longer meets the definition of a sexually violent predator; or (B) release to a proposed less restrictive alternative would be in the best interest of the person and conditions can be imposed that would adequately protect the community."[5] RCW 71.09.090(2)(c).
¶ 10 In the instant case, the trial court determined that the State presented prima facie evidence that Elmore warranted continued commitment. Although the trial court rejected Dr. Wollert's first three opinions regarding why Elmore was no longer an SVP, it also ruled that Elmore established probable cause that his condition had "so changed" based on his increase in age alone. CP at 281. In so ruling, the trial court followed In re Detention of Young, where the Court of Appeals held that "age is an important factor in determining risk of reoffense." 120 Wash.App. 753, 761-62, 86 P.3d 810 (2004). The trial court limited the evidentiary hearing to the issue of age alone. CP at 281.
¶ 11 In May 2005, during the pendency of the appeal in this matter, the legislature amended RCW 71.09.090 and established that a mere change in a demographic factorsuch as ageis insufficient to establish probable cause for a new trial.[6] RCW *1289 71.09.090(4)(c). The legislature deemed the decision in Young "contrary to the legislature's intent" and stated that the "mere advance in age . . . does not merit a new trial proceeding under RCW 71.09.090." Laws of 2005, ch. 344, § 1. The Court of Appeals applied the 2005 amendment retroactively to Elmore. It held that the 2005 amendment "clarified" that a change in age alone is insufficient to establish that a committed person's condition has "so changed" to warrant a full evidentiary hearing under RCW 71.09.090. Elmore, 134 Wash.App. at 416, 139 P.3d 1140. It thus held that "the trial court erred in using Elmore's age as a factor in granting him a new trial." Id. at 417, 139 P.3d 1140.
¶ 12 As a threshold matter, we must determine whether the 2005 amendment to RCW 71.09.090 applies retroactively to Elmore.[7] Courts disfavor retroactive application of a statute but may apply an amendment retroactively if (1) the legislature intended to apply the amendment retroactively, (2) the amendment is curative and "clarifies or technically corrects ambiguous statutory language," or (3) the amendment is remedial in nature. Barstad v. Stewart Title Guar. Co., 145 Wash.2d 528, 536-37, 39 P.3d 984 (2002); see also Agency Budget Corp. v. Wash. Ins. Guar. Ass'n, 93 Wash.2d 416, 424, 610 P.2d 361 (1980) ("A statute is presumed to operate prospectively."). Courts may examine the legislative purpose, history, language, and final bill report to determine whether an amendment is retroactive. Barstad, 145 Wash.2d at 537, 39 P.3d 984. In the instant case, the Court of Appeals determined that the amendment clarified the earlier version of the statute by indicating that age alone does not constitute probable cause.
¶ 13 A court may only consider an amendment curative and remedial if the amendment "clarifies . . . an ambiguous statute without changing prior case law constructions of the statute." Id. Here, the 2005 amendment expressly changed the holding in Young. Thus, while the amendment clarified the legislature's intent, we may not apply the amendment retroactively because it changed prior case law. Moreover, the 2005 amendment included an emergency clause. Laws of 2005, ch. 344, § 4. Such a clause weighs against retroactivity; "Had the legislature intended a retroactive effect, there would have been no need for an emergency clause." Agency Budget Corp., 93 Wash.2d at 425, 610 P.2d 361. Thus, we hold that the 2005 amendment is neither curative nor remedial because it changed the construction of the law as set forth in Young and contained an emergency clause. We therefore do not apply the amendment retroactively.[8]
B. Hearing on Continued Confinement
¶ 14 Under former RCW 71.09.090 (2001), a court may find probable cause to proceed to a full hearing if (1) the State "fail[s] to present prima facie evidence" justifying the continued incarceration or (2) the prisoner presents evidence that his or her condition has "so changed that . . . [t]he person no longer meets the definition of a sexually violent predator." Former RCW 71.09.090(c)(i), (ii)(A). This court reviews a "trial court's legal conclusion of whether evidence meets the probable cause standard" de novo. Petersen, 145 Wash.2d at 799, 42 P.3d 952. The question on review is "whether the evidence, or lack thereof, suffices to establish probable cause for an evidentiary hearing." Id. at 801, 42 P.3d 952.
*1290 ¶ 15 A court may not weigh the evidence in determining whether probable cause exists; rather, it must merely decide whether the facts, if believed, establish that the person is no longer an SVP or may otherwise be conditionally released. Id. at 796-98, 42 P.3d 952. If the court determines that probable cause exists, it must set a full hearing under RCW 71.09.090(3), where the parties may present all the evidence and the fact finder may weigh the evidence and resolve any disputes. Id. At the full hearing, the State bears the burden of proving "beyond a reasonable doubt that the committed person's condition remains such that the person continues to meet the definition of [an SVP]." RCW 71.09.090(3)(b).
¶ 16 Elmore contends that the trial court improperly weighed evidence at the show cause hearing when it concluded that Dr. Wollert's opinion was insufficient because "the staff at the [SCC] are of the opposite opinion." CP at 279. Elmore contends that "[b]y accepting the opinion of the State's expert concerning Elmore's progress in treatment, the `trial court substituted its judgment for that of [the detainee's] expert.'" Pet. for Review at 12 (quoting Young, 120 Wash.App. at 759-60, 86 P.3d 810). We agree and hold that the trial court improperly weighed Dr. Wollert's opinion about Elmore's residential treatment against the SCC's opinion. Although the State's evidence regarding Elmore's cannibalistic fantasies, diagnoses, and progress in treatment may conflict with Dr. Wollert's opinion, the show cause hearing is not the appropriate venue to weigh these opinions and resolve disputes.
¶ 17 Elmore further argues that the trial court erred in rejecting Dr. Wollert's opinion that Elmore's sexual sadism and personality disorder diagnoses changed based on treatment. The trial court rejected Dr. Wollert's opinion because his 2000 report also concluded that Elmore did not suffer from these disorders. According to the trial court, Dr. Wollert's report did not establish that his condition had "so changed" within the meaning of RCW 71.09.090. Elmore contends that Dr. Wollert's new report demonstrates a change because Dr. Wollert examined new evidence and reports in forming his opinion. The State contends that the trial court properly determined that Dr. Wollert's opinion failed to demonstrate a change in Elmore's "condition." The State reasons that "condition" under the statute is an ambiguous term referring to the "underlying mental disorders that give rise to . . . sexual offending." Corrected Opening Br. of Pet'r at 22. It contends that although Elmore may have aged and received additional treatment since his initial commitment, such changes did not alter his underlying mental condition.
¶ 18 We hold that the evidence presented established probable cause to warrant a full hearing on Elmore's status as an SVP. Dr. Wollert's report indicates that based on new data from the SCC clinical file and other sources, Elmore does not suffer from sexual sadism and personality disorder. The fact that Dr. Wollert previously opined that Elmore was not sexually sadistic is inapposite. See Petersen, 145 Wash.2d at 802-03, 42 P.3d 952 (finding probable cause based on an expert's report that came to the same conclusion as an earlier report). Dr. Wollert's opinion that Elmore's increase in age reduced his likelihood to reoffend supports a probable cause finding. Even under the 2005 amendment, a change in age may support probable cause if combined with other changes.
¶ 19 Thus, we remand for a full evidentiary hearing where the State must establish, beyond a reasonable doubt, that Elmore remains an SVP. In remanding, we note that a committed person is entitled to a full evidentiary hearing once that person has established probable cause under RCW 71.09.090(2). Here, the trial court erroneously limited the hearing to the issue of age alone thereby violating statutory language and case law. See RCW 71.09.090(3); accord Petersen, 145 Wash.2d at 798, 42 P.3d 952 (stating that if there is probable cause, "the matter must be set for a full evidentiary hearing" (emphasis added)).

CONCLUSION
¶ 20 We hold that the 2005 SVPA amendment does not apply retroactively to Elmore. *1291 We further hold that probable cause exists that Elmore no longer meets the definition of an SVP. We therefore reverse the Court of Appeals and remand to the trial court to conduct a full evidentiary hearing under RCW 71.09.090(3).
WE CONCUR: Chief Justice GERRY L. ALEXANDER, TOM CHAMBERS, CHARLES W. JOHNSON, RICHARD B. SANDERS and JAMES M. JOHNSON, JJ.
BRIDGE, J. (dissenting).
¶ 21 I agree with the majority that the 2005 amendments to the sexually violent predator act (Act), chapter 71.09 RCW, are not retroactive. However, even applying the old version of the Act, I believe that Keith Elmore must present evidence that demonstrates a change in the condition that led to his commitment before he is entitled to a full evidentiary hearing challenging his continued confinement. In my view, a show cause hearing pursuant to the Act is intended to be limited in scope and is not the appropriate venue in which to bring challenges unrelated to changes in condition since the initial commitment. Therefore, because his expert, Dr. Richard Wollert, did not demonstrate that Elmore's condition has changed, but instead argued that the original diagnosis was erroneous and that new studies demonstrate a decreased recidivism risk, I would find that Elmore did not make the required showing. At best, Elmore's expert demonstrates that the science has changed, not that Elmore has.
¶ 22 The purpose of the Act has always been to confine sexually violent predators (SVPs) for the purpose of long-term treatment. In its findings, the legislature explains that an involuntary commitment program specifically for sexual offenders is necessary because the other involuntary commitment act, chapter 71.05 RCW ("Mental Illness"), does not address the long-term treatment needs of sexually violent offenders. RCW 71.09.010. The legislature expressly states that "the treatment needs of this population are very long term, and the treatment modalities for this population are very different than the traditional treatment modalities for people appropriate for commitment under the involuntary treatment act." Id. The 2005 amendments clarified this focus; however, even the previous version of the Act refers to a "change" in condition. RCW 71.09.090(1), (2)(a), (2)(c)(ii) (emphasis added).
¶ 23 The majority asserts that the judge at the show cause hearing improperly weighed the evidence when he found that Dr. Wollert's view on Elmore's treatment-based change was insufficient to make a prima facie showing because "`the staff at the [Special Commitment Center] are of the opposite opinion.'" Majority at 1290 (quoting Clerk's Papers (CP) at 279). I disagree. While a detainee need not demonstrate that he or she has completed treatment in order to demonstrate change due to that treatment, what is lacking here is any conclusive statement by Dr. Wollert that the treatment Elmore received led to a change in his condition. In In re Detention of Ambers, 160 Wash.2d 543, 158 P.3d 1144 (2007), we found that Ambers made the required prima facie showing where the expert he retained stated that "`Mr. Ambers' risk has been reduced since [he was committed] as a result of having been involved in treatment for quite a number of years'" and that "`[t]he change in Mr. Ambers' condition has been brought about through positive responses to continuing participation in treatment that indicates that he no longer meets the criteria of a sexually violent predator.'" 160 Wash.2d at 558-59, 158 P.3d 1144 (quoting CP at 465, 215). In contrast, Dr. Wollert's report states only that it "would be appropriate to regard [Elmore] as having finished residential treatment" and that "[t]aken together," the areas that he evaluated (treatment progress, improper original diagnosis, new studies, and increased age) indicate that Elmore no longer meets the definition of an SVP. CP at 266, 270. I believe that, even without weighing Dr. Wollert's view against that of the Special Commitment Center staff, this is insufficient to demonstrate actual change, as the Act requires.
¶ 24 Dr. Wollert's report fails to demonstrate Elmore's change in the other areas he evaluated as well. Although Dr. Wollert states in the conclusion of his report that *1292 Elmore has "so changed" and that he "no longer" meets the definition of an SVP, CP at 270, the fact is that Dr. Wollert never believed Elmore to be an SVP in the first place. See CP at 176. In evaluating Elmore prior to his commitment, Dr. Wollert opined that Elmore "is unlikely to sexually recidivate." Id. Dr. Wollert's belief that Elmore's original diagnosis was improper and his reliance on new studies are not in fact indicative of change, but instead go to the issue of erroneous initial commitment. A detainee may challenge his committing diagnosis in a number of ways. Civil Rule (CR) 60(b) allows for a detainee to seek relief from judgment based on newly discovered evidence or "[a]ny other reason justifying relief." CR 60(b)(3), (11). Rule of Appellate Procedure (RAP) 16.4(c) allows a detainee to seek relief through a personal restraint petition, based on new material facts or "[o]ther grounds." RAP 16.4(c)(3), (5), (7). Additionally, a detainee may seek a writ of habeas corpus in federal court. See 28 U.S.C. §§ 2241-2255. That these other means for challenging commitment exist reinforces the notion that the legislature intended for a show cause hearing under the Act to be limited to the specific issue of change in condition.
¶ 25 The purpose of the Act is to promote treatment-based change, and thus I would find that a detainee must demonstrate an actual change in condition at his or her show cause hearing in order to receive a full trial on the issue of unconditional release. Elmore has failed to do so here. I dissent.
WE CONCUR: BARBARA A. MADSEN and MARY E. FAIRHURST, JJ.
NOTES
[1] Elmore's conviction resulted from an incident where he choked a co-worker's wife with a rope. Clerk's Papers (CP) at 45. Although he ultimately stopped choking her, he has since explained that he intended to fulfill his fantasy of "consuming and cannibalizing a woman" in order to "[absorb] her feminine attributes . . . becoming female." Id. at 104, 47.
[2] Although Elmore stipulated that he suffered from mental abnormalities, he specifically did not stipulate that he suffered from sexual sadism. CP at 5.
[3] Dr. Wollert also examined Elmore and issued a report in 2000, prior to Elmore's original commitment proceedings. CP at 145-78. However, because Elmore stipulated to commitment, Elmore did not present Dr. Wollert's report to the court. Dr. Wollert concluded in the 2000 report that Elmore would benefit from outpatient treatment. Id. at 176.
[4] Elmore changed his first name from Keith to Rebecca, and thus, many of the evaluations refer to Elmore with female pronouns.
[5] The only issue before the court is whether Elmore is entitled to a hearing to determine his eligibility for unconditional discharge.
[6] The legislative amendment added a new section to RCW 71.09.090, which states in pertinent part as follows:

(4)(a) Probable cause exists to believe that a person's condition has "so changed," under subsection (2) of this section, only when evidence exists, since the person's last commitment trial proceeding, of a substantial change in the person's physical or mental condition such that the person . . . no longer meets the definition of a sexually violent predator. . . .
(b) A new trial proceeding under subsection (3) of this section may be ordered, or held, only when there is current evidence from a licensed professional of one of the following and the evidence presents a change in condition since the person's last commitment trial proceeding:
(i) An identified physiological change to the person, such as paralysis, stroke, or dementia, that renders the committed person unable to commit a sexually violent act and this change is permanent; or
(ii) A change in the person's mental condition brought about through positive response to continuing participation in treatment which indicates that the person meets the standard for conditional release to a less restrictive alternative or that the person would be safe to be at large if unconditionally released from commitment.
(c) For purposes of this section, a change in a single demographic factor, without more, does not establish probable cause for a new trial proceeding. . . . As used in this section, a single demographic factor includes, but is not limited to, a change in the chronological age, marital status, or gender of the committed person.
(Emphasis added.)
[7] The State's contention that the "triggering event" for the 2005 amendment has not yet occurred is misplaced. The State argues that the amendment applies only to the release trial (evidentiary hearing) and not to the probable cause determination. This argument contravenes the express language of the amendment, which states, "[f]or purposes of this section, a change in a single demographic factor, without more, does not establish probable cause for a new trial proceeding." RCW 71.09.090(4)(c). The triggering event for the amendment is the initial probable cause determination, which already occurred in this case.
[8] Because we hold that the 2005 amendment does not apply retroactively, we need not consider Elmore's argument that the amendment deprives him of his constitutional due process rights.