[No. 24691-4-III.    Division Three.    September 25, 2008.]

*In the Matter of the Detention of* PETER SAVALA.

THE STATE OF WASHINGTON, *Respondent*, v. PETER SAVALA, *Appellant*.

800

*Valerie Marushige*, for appellant.

*Robert M. McKenna, Attorney General, Sarah B. Sappington, Senior Counsel*, and *Todd R. Bowers, Assistant*, for respondent.

¶1 SWEENEY, J. — A sexually violent predator must make a prima facie showing that he no longer meets the statutory criteria—that his condition has changed—to be entitled to a new commitment hearing. The legislature amended a statute (RCW 71.09.090) to provide that certain demographic factors alone will not support this required showing. Here, the only change we find in the record to support a new commitment hearing is the appellant's age. Change in age alone is not sufficient to warrant a new commitment hearing under the statute. We further conclude that the statutory scheme passes constitutional muster. We, therefore, affirm the trial judge's refusal to order a new hearing.

## FACTS

¶2 The State committed Peter Savala as a sexually violent predator on October 12, 2001. Mr. Savala petitioned in 2005 for a hearing to show that he no longer met the statutory definition of a "sexually violent predator."

¶3 The State's expert, Dr. Paul Spizman, concluded that Mr. Savala continued to meet the definition of a "sexually violent predator": "Mr. Savala's present mental condition seriously impairs his ability to control his sexually violent behavior." Clerk's Papers (CP) at 89.

¶4 Mr. Savala's expert, Dr. Richard Wollert, concluded that Mr. Savala's recidivism rate falls below the commitment standard. CP at 12, 21, 26. He concluded that Mr. Savala was unlikely to relapse, and it would be unreasonable to classify him as a sexually violent predator. Dr.

Wollert reviewed Mr. Savala's file and scored him on tests known as RRASOR and Static-99. Mr. Savala received a score of 2 on the RRASOR and a score of 4 on the Static-99. The 10-year relapse rate for those with a RRASOR score of 2 is 21 percent. And the 15-year relapse rate for those with a Static-99 score of 4 is 36 percent.

¶5  Mr. Savala is 51 years old. Dr. Wollert considered his age. As a result of the age adjustment (older men are less likely to relapse), Mr. Savala's 10-year relapse rate under RRASOR is about 11 percent and his 15-year relapse rate under the Static-99 is 18 percent. These scores fall below the commitment standard. Dr. Wollert, therefore, concluded that it would be unreasonable to label Mr. Savala as a sexually violent predator.

¶6 The trial court concluded that Mr. Savala did not show that his condition changed and denied his petition for a new hearing.

## DISCUSSION

¶7 Mr. Savala contends that the court erred when it denied his petition for a new hearing. He argues that Dr. Wollert's assessment sufficiently shows that his condition changed. The State responds that Mr. Savala failed to show that he no longer meets the definition of a "sexually violent predator" under the amended version of RCW 71.09.090 because the only change he showed was advanced age.

¶8 There is no dispute on the material facts supporting the court's decision here. So whether Mr. Savala's evidence was sufficient to meet the probable cause standard required by RCW 71.09.090(4) is a question of law and our review is therefore de novo. *In re Det. of Young*, 120 Wn. App. 753, 757, 86 P.3d 810 (2004). The question is whether "probable cause exists," warranting a hearing on the merits. RCW 71.09.090(2). The standard of proof is "probable cause." *In re Det. of Petersen*, 145 Wn.2d 789, 797, 42 P.3d 952 (2002). There are two ways for a court to conclude that "probable cause exists": (1) the failure of the State to show

that the petitioner's condition has not changed, or (2) the petitioner's affirmative showing that it has. *Id.* at 798.

¶9 Mr. Savala relies on *Young* and *In re Detention of Ward* for his contention that Dr. Wollert's report and declaration support a prima facie showing that his condition has changed. *Young*, 120 Wn. App. at 755; *In re Det. of Ward*, 125 Wn. App. 381, 383, 104 P.3d 747 (2005).

¶10 The legislature, however, found that *Young* and *Ward* "illustrate an unintended consequence of language in chapter 71.09 RCW." LAWS OF 2005, ch. 344, § 1. The purpose of this statutory scheme is to address the " 'very long-term' " needs of sexually violent predators for necessary treatment and the long-term needs of the community for protection. *Id.* And the "legislature [found] that a new trial ordered under the circumstances set forth in *Young* and *Ward* subverts the statutory focus on treatment and reduces community safety by removing all incentive for successful treatment participation in favor of passive aging and distracting committed persons from fully engaging in sex offender treatment." *Id.*

¶11 The legislature then added subsection (4) to RCW 71.09.090. LAWS OF 2005, ch. 344, § 2. The subsection requires more than a change in age, marital status, or gender to show probable cause for a new commitment trial:

> For purposes of this section, a change in a single demographic factor, without more, does not establish probable cause for a new trial proceeding under subsection (3) of this section. As used in this section, a single demographic factor includes, but is not limited to, a change in the chronological age, marital status, or gender of the committed person.

RCW 71.09.090(4)(c).

¶12 The only change Mr. Savala demonstrated, on this record, is that he is older, which is the sole reason for his lower relapse rate. We, like the trial court, are unable to conclude that Dr. Wollert's psychological assessment reflects "a substantial change in [Mr. Savala's] physical or mental condition." RCW 71.09.090(4)(a).

¶13 Mr. Savala did not, then, present a prima facie case that his condition has changed to the point that he no longer meets the criteria of a sexually violent predator as required by RCW 71.09.090(4).

CONSTITUTIONAL CHALLENGES

¶14 This case was stayed pending two state Supreme Court cases, *In re Detention of Ambers*, 160 Wn.2d 543, 158 P.3d 1144 (2007), and *In re Detention of Elmore*, 162 Wn.2d 27, 168 P.3d 1285 (2007). Neither of those decisions affects the analysis here because neither opinion addresses the constitutional issues Mr. Savala raises. *Elmore*, 162 Wn.2d at 36 n.8; *Ambers*, 160 Wn.2d at 559 n.7.

*Due Process*

¶15 Mr. Savala argues that his constitutional right to due process of law has been violated because the legislative amendment to RCW 71.09.090 contradicts the court's constitutional decisions in *Young* and *Ward*. Appellant's Br. at 9. He argues that RCW 71.09.090(4), in particular, violates his due process rights because it improperly limits the evidence he can use to show probable cause for a new commitment hearing. Appellant's Br. at 11.

¶16 The State responds that the amendment to RCW 71.09.090 does not violate due process because it was not a substantive change. The amendment, instead, simply clarified what evidence can be used to show probable cause for a new commitment trial. In other words, the legislature provided guidance on what factors entitle a sexually violent predator to a full review of his commitment.

¶17 Whether RCW 71.09.090(4) passes constitutional muster is a question of law. We review constitutional challenges de novo. *City of Redmond v. Moore*, 151 Wn.2d 664, 668, 91 P.3d 875 (2004).

¶18 Commitment statutes are subject to strict scrutiny because they affect an important and fundamental constitutional right—the right to liberty. *In re Det. of*

*Albrecht*, 147 Wn.2d 1, 7, 51 P.3d 73 (2002). Nonetheless, we begin with the assumption that the challenged statute is constitutional. This is particularly so since " 'the statute's purpose is to promote safety and welfare, and the statute bears a reasonable and substantial relationship to that purpose.' " *In re Det. of Fox*, 138 Wn. App. 374, 397, 158 P.3d 69 (2007) (quoting *State v. Glas*, 147 Wn.2d 410, 422, 54 P.3d 147 (2002)), *review granted in part & remanded*, 162 Wn.2d 1019 (2008); *see In re Pers. Restraint of Young*, 122 Wn.2d 1, 22, 857 P.2d 989 (1993). For example, commitment serves two legislative purposes: treatment and restraint. *Young*, 122 Wn.2d at 22. Moreover, the Department of Social and Health Services must provide " 'control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that the person is safe to be at large'." *Id.* at 33 (quoting former RCW 71.09.060(1) (1990)).

¶19 Division Two of this court recently addressed the issue of whether amended RCW 71.09.090 violates due process. *Fox*, 138 Wn. App. at 398. A majority of the court concluded that the amendment to RCW 71.09.090 was a clarification that did not infringe upon a sexually violent predator's due process rights. *Id.* at 400. We agree with the majority in *Fox* and also conclude that amended RCW 71.09.090 does not violate Mr. Savala's due process rights.

¶20 Moreover, our Supreme Court has already concluded that the procedures for commitment of sexually violent predators pass constitutional muster because they require a showing of mental illness and present dangerousness before the State can commit a person as a sexually violent predator. *Young*, 122 Wn.2d at 32-33. And sexually violent predators must be mentally ill and presently dangerous to justify their continued commitment. *See Fox*, 138 Wn. App. at 397. Nothing in the amendment to RCW 71.09.090(4) changes that requirement.

¶21 Mr. Savala can still show that he has been treated, that he has changed, and that he no longer satisfies the definition of a "sexually violent predator." *See id.* at 399. The

showing simply cannot be based on a single demographic factor. RCW 71.09.090(4)(c); *Fox*, 138 Wn. App. at 400 (sexually violent predator's case cannot be based solely on growing older, getting married, or undergoing a gender change). This does not violate due process safeguards. *Fox*, 138 Wn. App. at 398-400.

*Separation of Powers*

¶22 Mr. Savala next argues that the amended statute violates the separation of powers doctrine by intruding upon the authority reserved for the judiciary. Appellant's Br. at 16.

¶23 The State responds that there is no violation of the separation of powers because the court's decisions in *Young* and *Ward* purported to interpret the statute; they did not pass on the constitutionality of the statutory scheme.

¶24 Again, we review constitutional challenges de novo. *Moore*, 151 Wn.2d at 668.

¶25 The separation of powers doctrine reflects the constitutional distribution of political authority among the three branches of government: the legislative, the executive, and the judicial. *State v. Moreno*, 147 Wn.2d 500, 505, 58 P.3d 265 (2002). Each branch wields only the power it is given, and a separation of powers violation occurs when one branch of government invades the province of another. *Id.* "The purpose of the doctrine is to prevent one branch of government from aggrandizing itself or encroaching upon the 'fundamental functions' of another." *Id.* (quoting *Carrick v. Locke*, 125 Wn.2d 129, 135, 882 P.2d 173 (1994)).

¶26 Separate governmental functions are reserved, by the constitution, for the courts and for the legislature. *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 143, 744 P.2d 1032, 750 P.2d 254 (1987). Courts interpret, construe, and apply laws made by the legislature. *Marine Power & Equip. Co. v. Human Rights Comm'n Hearing Tribunal*, 39 Wn. App. 609, 615 n.2, 694 P.2d 697 (1985). And it is for this reason that "legislative clarifica-

tions construing or interpreting existing statutes are unconstitutional when they contravene prior judicial interpretations of a statute." *Id.* The legislature may, however, amend a statute. *Id.* at 615 (citing *Johnson v. Morris*, 87 Wn.2d 922, 926, 557 P.2d 1299 (1976)). For example, legislative enactments which respond to judicial interpretations of a prior statute and which materially and affirmatively change that statute are not simply "clarifications" of the original intent of the legislature; rather, such enactments are "amendments" to the statute itself. *Id.* at 616. And that is what the legislature did here in response to the *Young* and *Ward* interpretations of "probable cause." LAWS OF 2005, ch. 344.

¶27 RCW 71.09.090(4) affirmatively changed the statute by setting out the factors a court can consider in determining whether a sexually violent predator's mental or physical condition has changed. *Fox*, 138 Wn. App. at 393-95. The statute does not limit the court's ability to analyze and weigh risk assessments or demographic factors during probable cause hearings. *Id.* at 395. We conclude that the revisions do not tread upon constitutional authority vested in the judicial branch. *See id.* at 393-96.

¶28 We affirm the court's refusal to grant a new commitment hearing.

BROWN and KORSMO, JJ., concur.