IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of<br><br>BRUCE S. RAFFORD,<br><br>                    Respondent. | No. 81416-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Bruce Rafford is civilly committed as a sexually violent predator (SVP). Pursuant to RCW 71.09.092 and following the court's order permitting him to seek a less restrictive alternative (LRA), Rafford proposed his conditional release to Complete Care Company LLC. The trial court accepted his proposal and ordered the Department of Social and Health Services/Special Commitment Center (DSHS) to pay Complete Care over $30,000 per month for Rafford's care, housing, and supervision.

DSHS appeals, asserting that the trial court lacked authority to require it to pay all costs associated with Rafford's treatment and housing at Complete Care. Rafford asserts that, under RAP 2.2, DSHS cannot appeal because it was not a party to the proceeding below. As to the latter assertion, because DSHS has a pecuniary interest in the proceeding, DSHS may appeal under RAP 2.2(3) without seeking discretionary review. As to the former issue, because the court ordered DSHS to pay costs beyond those related to Rafford's treatment, the court erred. Therefore, we remand to the trial court to modify its order consistent with this opinion.

Citations and pin cites are based on the Westlaw online version of the cited material.

BACKGROUND

Under the sexually violent predator act (SVPA), chapter 71.09 RCW, "when an offender's sentence is about to expire, the State may file a petition alleging that the offender is an SVP." In re Det. of Reyes, 184 Wn.2d 340, 343, 358 P.3d 394 (2015). An SVP is an individual "convicted of or charged with a crime of sexual violence . . . who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18). If a jury finds that an offender is an SVP, they "shall be committed to the custody of the [DSHS] . . . for control, care, and treatment until such time as" the person's condition has changed and they no longer meet the definition of an SVP or conditional release to an LRA "is in the best interest of the person and conditions can be imposed that would adequately protect the community." RCW 71.09.060(1).

At their annual show cause review hearing, an individual may seek conditional release to an LRA. RCW 71.09.090(1). An LRA is defined as "court-ordered treatment in a setting less restrictive than total confinement" which satisfies the statutory requirements. RCW 71.09.020(6). If the court finds probable cause exists to allow for conditional or unconditional release, the court must hold a full trial addressing the individual's release. RCW 71.09.090(2)(c). There, the SVP must propose a specific LRA that meets five statutory requirements under RCW 71.09.092. If the SVP is entitled to placement in an LRA, the court, based on recommendations by the Department of Corrections (DOC), orders conditions required to protect the community and orders DSHS to

pay the costs associated with the SVP's treatment at the LRA.  RCW 71.09.096; RCW 71.09.110.

FACTS

On July 1, 2004, the Snohomish County Superior Court civilly committed Rafford as an SVP.  Specifically, the court committed Rafford to the custody of DSHS for placement in the Special Commitment Center (SCC) on McNeil Island.

On November 19, 2013, the SCC authorized Rafford to petition for release to a Secure Community Transition Facility (SCTF).  Five months later, the court conditionally released Rafford to Pierce County's SCTF.

In March 2017, the court found probable cause that Aacres Property Holdings LLC, an LRA residence, met the statutory requirements and that Rafford's release to Aacres was in his "best interest and conditions could be ordered to adequately protect the community."  Accordingly, the trial court set a trial date for Rafford's conditional release.

After the trial, the court concluded that Rafford's conditional release to Aacres was in his best interest and included conditions necessary to protect the community.  Therefore, the court ordered DSHS to release Rafford to Aacres and noted that DSHS and Aacres had a contract for their treatment and care of SVPs. The court's order on release included residential conditions, treatment conditions, supervision conditions, standard conditions, and special conditions.

In October 2019, Aacres went out of business.  Two months later, Complete Care agreed to provide secure housing and treatment to Rafford.  In

March 2020, the DOC investigated Complete Care, making recommendations to the court regarding necessary conditions at the Complete Care facility.

At a hearing regarding Rafford's LRA placement with Complete Care, in April 2020, the State, Rafford, and the DSHS were represented. On DOC's recommendations, the court ordered conditions necessary to protect the community. The court found that Rafford's release to Complete Care complied with the statutory requirements and concluded that "[c]ontinued conditional release to a community [LRA] . . . is in Mr. Rafford's best interest and includes conditions that will adequately protect the community." The order required DSHS to pay funds to Complete Care for Rafford's placement, living expenses, and care at the Complete Care facility in Graham, Washington. Specifically, the court's order provided that "DSHS/SCC shall pay for the following costs:" (a) $2,000 "to reimburse [Complete Care] for start-up expenses previously purchased by the company, (i.e., bed, mattress, sheets, dresser, etc.)"; (b) $2,235 "a month in administrative costs" including "costs associated with transporting Mr. Rafford in the community, and administrative activities such as program planning, health care management, and staff training"; (c) $1,935 "a month for basic maintenance," including "rent, food, utilities and community inclusion"; and (d) $25,836 "a month for staff costs" for "one on one supervision by a staff member." The court ordered DSHS to pay a total of $30,006 per month to Complete Care. It concluded "that the payment to [Complete Care] are costs relating to Mr. Rafford's treatment."

The State did not contest that Rafford's placement at Complete Care

4

could be in his best interest or that the court's order contained adequate conditions to protect the community. However, DSHS contested the portion of the order requiring it to pay Complete Care for Rafford's placement, living expenses, and care at Complete Care's facility. The court ordered Rafford to be conditionally released to Complete Care's facility on May 13, 2020.

DSHS appeals.

ANALYSIS

DSHS's Ability To Appeal

Rafford asserts that, under RAP 2.2, the State may not appeal the order modifying the LRA. Because aggrieved parties may appeal if they have a pecuniary interest under RAP 3.1 and because the order constituted a written decision affecting a substantial right that in effect determines the action under RAP 2.2(a)(3), we disagree.

"The appealability of superior court decisions is governed by the Rules of Appellate Procedure." In re Det. of McHatton, ___ Wn.2d ___, 485 P.3d 322, 324 (2021). "We review interpretations of court rules de novo." McHatton, 485 P.3d at 324.

In general, "[t]hose who are not parties to an action may not appeal." Aguirre v. AT&T Wireless Servs., 109 Wn. App. 80, 85, 33 P.3d 1110 (2001); see also RAP 2.2(a)(8) (A *party* to a case may appeal "[a] decision ordering commitment, entered after . . . a sexual predator hearing."). However, "Washington courts have long recognized that, under some narrow circumstances, persons who were not formal parties to trial court proceedings,

5

but who are aggrieved by orders entered in the course of those proceedings, may appeal as 'aggrieved parties.'" State v. G.A.H., 133 Wn. App. 567, 574, 137 P.3d 66 (2006). Specifically, under RAP 3.1, "an aggrieved party may seek review by the appellate court." And an aggrieved party is "one whose personal right or pecuniary interests have been affected." State v. Taylor, 150 Wn.2d 599, 603, 80 P.3d 605 (2003).

In G.A.H., G.A.H. was being held in juvenile detention on several charges, and DSHS was not a party to G.A.H.'s detention review hearing. 133 Wn. App. at 570-71. At the hearings, the court ordered G.A.H's release to DSHS "for assessment of services and a possible foster care placement." G.A.H., 133 Wn. App. at 570-71. Subsequently, the court ordered DSHS to place G.A.H. in foster care. G.A.H., 133 Wn. App. at 571. DSHS placed G.A.H. in foster care but appealed the juvenile court's orders, arguing that the court did not have authority to order DSHS to place G.A.H. in foster care. G.A.H., 133 Wn. App. at 571-72.

On appeal, we concluded that, although DSHS was not a party to the proceedings below, "DSHS may appeal this matter as an 'aggrieved party' under RAP 3.1" and the statute governing juvenile courts. G.A.H., 133 Wn. App. at 574. Specifically, we reasoned that because "DSHS was ordered to assume custodial and financial responsibility of G.A.H.'s welfare," DSHS was "an aggrieved party" that could appeal as a matter of right. G.A.H., 133 Wn. App. at 575. We also rejected the respondents' claim that DSHS had to seek discretionary review, because we concluded that the juvenile court order was a

final order "appealable as a matter of right" under RAP 2.2(a)(1).  G.A.H., 133 Wn. App. at 576.

Like DSHS's position in G.A.H., here, the trial court ordered DSHS to assume financial responsibility for all of the expenses related to Rafford's placement at Complete Care.  Accordingly, DSHS was an aggrieved party with a substantial pecuniary interest affected by the court's decision.  Cf. In re Guardianship of Lasky, 54 Wn. App. 841, 844, 850, 776 P.2d 695 (1989) (concluding that an attorney did not have an interest in the court's order to remove him as an individual's guardian but that he did have a pecuniary interest in his fees and in the sanctions that the court imposed on him).  And like in G.A.H., DSHS did not have to seek discretionary review because the court's order was a "written decision affecting a substantial right in a civil case that in effect determines the action and prevents a final judgment."  RAP 2.2(a)(3).  Specifically, it is a final judgment in that DSHS is now required to pay Complete Care.  Therefore, we conclude that DSHS may appeal the court's order as a matter of right.  And we review the merits of DSHS's challenge to the trial court's order.

Rafford cites In re Detention of Peterson, 138 Wn.2d 70, 980 P.2d 1204 (1999), for the proposition that "subsequent orders related to the underlying commitment are generally reviewable only under RAP 2.3."  Peterson relies heavily on In re Dependency of Chubb, where the court held that the language of RAP 2.2(a) and the statute governing dependency review hearings "indicate[ ] that appeal by right applies only to disposition decision following the finding of

7

dependency or *to a marked change in the status quo,* which in effect amounts to a new disposition." 112 Wn.2d 719, 724-25, 773 P.2d 851 (1989).

In Peterson, the court similarly held that the dependent could not appeal the trial court's probable cause decision under RCW 71.09.090(2). 138 Wn.2d at 83, 90. Following Peterson's annual show cause hearing, the court ordered his continued commitment. Peterson, 138 Wn.2d at 83. The court distinguished the show cause hearing from the full hearing, which follows if the court finds probable cause. Peterson, 138 Wn.2d at 85-86. It concluded that "[t]he show cause hearing is in the nature of a summary proceeding wherein the trial court makes a threshold determination." Peterson, 138 Wn.2d at 86.

In Peterson, the court did not make a statement regarding whether or not the orders following the full hearings are appealable, and that is what is at issue here. The court's order regarding Rafford's LRA did not maintain the status quo: it modified the conditional release order to commit Rafford to Complete Care and require DSHS to pay Complete Care. Thus, these cases are distinguishable, and Rafford's reliance thereon is misplaced.

Finally, our Supreme Court recently addressed a similar issue in McHatton. There, McHatton was conditionally released to an LRA, but when he violated a condition of that release, the court revoked his placement at the LRA. McHatton, 485 P.3d at 323. McHatton asserted that the revocation was appealable as a matter of right under RAP 2.2(a)(8) and RAP 2.2(a)(13). McHatton, 485 P.3d at 323-24. RAP 2.2(a)(8) provides for the appeal of an order committing an individual to DSHS's care following the original SVP hearing.

RAP 2.2(a)(13) allows for a party's appeal of a "*Final Order after Judgment.* Any final order made after judgment that affects a substantial right."

With regard to RAP 2.2(a)(8), the court concluded that, "regardless of whether a person is in total confinement or in an LRA, they remain a 'committed person' under the statute." McHatton, 485 P.3d at 324. The revocation was not appealable as a matter of right under RAP 2.2(a)(8) because it did not change the person's status as a committed person. McHatton, 485 P.3d at 324. The court further concluded that the order was not "'final'" for purposes of RAP 2.2(a)(13). McHatton, 485 P.3d at 325. Because McHatton asserted appealability under RAP 2.2(a)(8) and RAP 2.2(a)(13), McHatton is distinguishable because DSHS asserts appealability under RAP 2.2(a)(3). Furthermore, the order requiring DSHS to pay Complete Care affects a substantial right, determines the action, and prevents appeal: it orders DSHS's timely payment of Rafford's LRA costs at a new facility. Accordingly, RAP 2.2(a)(3) authorizes DSHS's appeal.

### LRA Costs

DSHS contends that the trial court lacked authority to order it to pay the costs of Rafford's placement at Complete Care. We agree that the trial court went beyond its statutory authority when it ordered DSHS to pay costs other than those related to Rafford's treatment.

Under RCW 71.09.110, DSHS "shall be responsible for the costs relating to the treatment of persons committed to their custody whether in a secure facility or under [an LRA]." Treatment is defined as: "sex offender specific treatment

9

program at the [SCC] or a specific course of sex offender treatment."
RCW 71.09.020(20). For a court to order conditional release to an LRA, the SVP
must be "treated by a treatment provider who is qualified to provide such
treatment," and "the treatment provider [must present] a specific course of
treatment and [agree] to assume responsibility for such treatment."
RCW 71.09.092(1), (2). To order conditional release, the court must impose
conditions necessary to protect the community. RCW 71.09.096(1).

We are asked to determine whether the trial court misapplied
RCW 71.09.110 when it determined that all of Complete Care's costs were
related to treatment. "As a mixed question of law and fact, we review that
decision de novo, applying the law to the facts found by the trial court." In re
Guardianship of T.H., 15 Wn. App. 2d 495, 498, 475 P.3d 1045 (2020). "A
challenged finding of fact is sufficient when supported by substantial evidence."
T.H., 15 Wn. App. 2d at 498. We review a trial court's conclusion with regard to
an issue of statutory interpretation de novo. T.H., 15 Wn. App. 2d at 498; In re
Pers. Restraint of Parejo, 5 Wn. App. 2d 558, 572, 428 P.3d 130 (2018). And we
strictly construe the SVPA. Parejo, 5 Wn. App. 2d at 572.

As an initial matter, DSHS contends that it cannot be ordered to pay any
private LRA costs, relying heavily on In re Det. of Campbell, 130 Wn. App. 850,
124 P.3d 670 (2005), to support that contention. In Campbell, Elmer Campbell
was a civilly committed SVP. 130 Wn. App. at 852. Years after his commitment,
Campbell proposed an LRA with his parents in Wewoka, Oklahoma. Campbell,
130 Wn. App. at 852. The Oklahoma County Mental Health Association provided

a letter to the court stating that "it would 'consider' contracting to supervise Campbell." Campbell, 130 Wn. App. at 852. The DOC opposed Campbell's proposal, asserting that they did not have the resources to supervise out-of-state commitments. Campbell, 130 Wn. App. at 852. We held that, although "a court might designate a service provider other than the DOC or DSHS, it is not necessary for a court to designate private, state-funded, *out-of-state* supervisors in order to provide for the conditional release of SVPs to LRAs when statutory criteria are satisfied." Campbell, 130 Wn. App. at 860 (emphasis added).

Rafford does not seek out-of-state care. And RCW 71.09.096(3) provides that the court may designate placement at an LRA other than DSHS. Unlike the statutory requirement that the individual be treated in Washington,[1] the SVPA does not require that an SVP receive treatment in a public facility. Therefore, the court has authority to order DSHS to pay costs for an SVP's placement in a private LRA, and Campbell is unpersuasive.[2]

---

[1] See RCW 71.09.092(1), (3) (requiring that the treatment provider be "qualified to provide such treatment in the state of Washington," and that "housing exists in Washington that is sufficiently secure").

[2] DSHS also contends that the trial court violated the separation of powers doctrine when it ordered DSHS to pay Complete Care. We disagree. "The separation of powers doctrine reflects the constitutional distribution of political authority among the three branches of government: the legislative, the executive, and the judicial." In re Det. of Savala, 147 Wn. App. 798, 806, 199 P.3d 413 (2008). "Separate governmental functions are reserved, by the constitution, for the courts and for the legislature." Savala, 147 Wn. App. at 806. Specifically, "[c]ourts interpret, construe, and apply laws made by the legislature." Savala, 147 Wn. App. at 806. Here, although the court's interpretation and application of the law was incorrect with regard to start-up costs, it was simply that: an interpretation of what constitutes treatment under the SVPA. Therefore, the court did not violate the separation of powers doctrine; rather, it acted within the scope of its separate governmental function to interpret and apply the law.

The court found that the costs for start-up expenses, administrative costs, basic maintenance, and staff costs were "related to Rafford's treatment under his LRA." It therefore ordered DSHS to pay these costs to Complete Care.

Complete Care asserted that administrative costs included program planning, health care management, and staff training. Treatment is defined as sex offender specific programming, and the dictionary defines "program" as "a schedule or system under which action may be taken toward a desired goal." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1812 (2002); see also Lyft, Inc. v. City of Seattle, 190 Wn.2d 769, 781, 418 P.3d 102 (2018) (defining a term by "its usual and ordinary dictionary definition" where the statute provided no definition). Because this cost includes program planning that is necessary for the individual's treatment, the court's finding that the administrative costs are related to treatment is supported by substantial evidence. Accordingly, the court's conclusion is affirmed with regard to these costs.[3]

With regard to the start-up costs, the record does not support the trial court's finding that they were related to treatment. In particular, DSHS should not be compelled to pay for a business venture's birth. Nowhere does the statute order DSHS to pay for start-up costs, and the treatment's definition does not include those costs. Furthermore, start-up costs do not relate to an individual's sex offender programming as required by their treatment provider. Therefore,

---

[3] DSHS may provide payment for additional costs at its discretion. See RCW 71.09.080(6) ("As funds are available, the secretary may provide payment to the indigent persons conditionally released pursuant to this chapter consistent with the optional provisions of RCW 72.02.100 and 72.02.110, and may adopt rules to do so.").

the trial court's finding with regard to this cost is not supported by substantial evidence and is a legal error in its application of the statute.

With regard to the remaining costs, including the costs of secure and staff monitored housing and Rafford's basic maintenance, the statute fails to include them in the definition of treatment. These costs are not part of the doctor's treatment but, instead, stem from the care and control of the individual. To that end, with regard to an individual's placement in a DSHS facility, the SVPA specifically provides that DSHS must provide for the individual's "*control, care, and treatment until . . . conditional release to [an LRA]*" is ordered. RCW 71.09.060(1). However, the SVPA does not include that same language where it orders DSHS to pay LRA costs or where it defines treatment. It is counterintuitive to expect that indigent SVPs would be in a position to pay for housing, which is necessary for them to receive treatment under an LRA. The legislature recently amended the statute to correct this shortcoming, adding the requirement that DSHS provide "financial support for necessary housing at an LRA." LAWS OF 2021, ch. 236, § 6 (effective July 25, 2021). Unfortunately, the statute's current version does not include that requirement. For this reason, these general facility costs are not related to treatment, and the trial court erred when it concluded that DSHS must pay them. See State v. Swanson, 116 Wn. App. 67, 76, 65 P.3d 343 (2003) (holding that where the statute does not include a particular requirement for the reinstatement of an individual's firearm rights, no requirement exists).

We reverse in part the trial court's order and remand for it to modify the

13

order consistent with this opinion. Nothing in this opinion eliminates the trial court's discretion to deny an SVP's proposed LRA,[4] and nothing in this opinion lessens DSHS's statutory duty to provide and pay for an SVP's placement in LRAs.

_____

WE CONCUR:

_____  _____

---

[4] See RCW 71.09.092 (providing that a court may—not shall—enter an order directing conditional release to an LRA, granting the trial court discretion).