260 P.3d 941 (2011)
163 Wn. App. 649
In re the DETENTION OF Gary CHERRY, Appellant.
No. 40096-1-II.
Court of Appeals of Washington, Division 2.
September 13, 2011.
*942 Oliver Ross Davis, Washington Appellate Project, Seattle, WA, for Petitioner.
Brooke Elizabeth Burbank, Assistant Attorney General, Seattle, WA, for Respondent.
QUINN-BRINTNALL, J.
¶ 1 Gary Eugene Cherry appeals the trial court's refusal to sign an agreed order granting him unconditional release from commitment as a sexually violent predator (SVP) and the trial court's subsequent refusal to grant him a jury trial on the issue of unconditional release. Because the trial court erred in denying Cherry a jury trial, we reverse and remand.

FACTS
¶ 2 Cherry was civilly committed as an SVP in 1999. At the beginning of 2003, he was conditionally released from the Special Commitment Center (SCC) to a less restrictive, alternative confinement on McNeil Island and, at the end of 2003, he was conditionally released to his home in Shelton.
¶ 3 The trial court granted Cherry additional "step-downs" in his community-based supervision due to his progress in conditional release. In 2007, as part of the annual review process, SCC psychologist Dr. James Manley evaluated Cherry and concluded that he no longer met the definition of an SVP and was entitled to unconditional release. The State retained an evaluator who recommended that Cherry stay on conditional release, however, and, after a stipulated bench trial, the court found that Cherry continued to meet the SVP definition and that conditional release remained in his best interest. Nevertheless, the trial court reduced Cherry's restrictions and granted him the ability to travel within the state without notifying his community corrections officer.
¶ 4 Dr. Manley subsequently completed Cherry's 2008 annual review and again recommended his unconditional release. He made the same recommendation in Cherry's 2009 annual review report. In 2009, the psychological staff at the SCC that oversees treatment progress, the SCC superintendent, and Cherry's sex offender treatment provider also recommended Cherry's unconditional release based on his progress in treatment and his successful self-management in the community for six years.
¶ 5 Relying on the SCC superintendent's authorization, Cherry petitioned the trial court for unconditional release. In his petition, he asked the court to set a trial, noting that he had retained the expert services of Dr. Richard Wollert. When the matter proceeded to a hearing, however, the parties presented the court with an agreed order dismissing the SVP petition and granting Cherry unconditional release. In that order, the State stipulated that, based on the SCC's 2007, 2008, and 2009 annual reviews, as well as the opinions of Cherry's sex offender treatment provider, it could not prove beyond a reasonable doubt that Cherry continues to meet the criteria for commitment as an SVP.
*943 ¶ 6 The trial court refused to accept the stipulation and denied Cherry's petition for unconditional release as well as his request for a jury trial on the matter. The trial court did not find probable cause to believe that Cherry's condition had so changed that he no longer meets the definition of an SVP, concluding instead that Cherry still meets the definition beyond a reasonable doubt. The trial court's written findings supporting those conclusions relied heavily on the actuarial test results listed in Dr. Manley's 2008 and 2009 reports, which showed Cherry as having a high risk to reoffend.
¶ 7 We granted the parties' joint motion for discretionary review.

DISCUSSION

Right to Unconditional Release Trial
¶ 8 Cherry argues that the trial court erred in denying him a jury trial on his petition for unconditional release. In addressing this claim of error, we find a brief overview of the SVP commitment and review process helpful.
¶ 9 At the initial commitment proceeding, the State must prove beyond a reasonable doubt that the individual suffers from a mental disorder and is dangerous. In re Det. of Moore, 167 Wash.2d 113, 124, 216 P.3d 1015 (2009). Because SVP commitment is indefinite, the due process requirement that a detainee be mentally ill and dangerous is ongoing. In re Moore, 167 Wash.2d at 125 n. 3, 216 P.3d 1015. Each year, the Department of Social and Health Services (DSHS) must examine SVP detainees to determine whether they continue to meet the standard for commitment. RCW 71.09.070; In re Det. of Ambers, 160 Wash.2d 543, 548, 158 P.3d 1144 (2007). The resulting report is served on the trial court that conducted the original commitment hearing, the detainee, and the prosecuting attorney. RCW 71.09.070; In re Ambers, 160 Wash.2d at 548, 158 P.3d 1144. If the secretary of DSHS or a designee determines that a detainee is no longer mentally ill or dangerous, the secretary must authorize him to petition for release. In re Ambers, 160 Wash.2d at 548, 158 P.3d 1144; see RCW 71.09.090(1). Such a petition is filed with the trial court and served on the prosecuting agency responsible for the initial commitment-in this case, the attorney general. RCW 71.09.090(1),.020(11); In re Det. of Cherry, noted at 105 Wash.App. 1026, 2001 WL 285763, review denied, 144 Wash.2d 1017, 32 P.3d 283 (2001). Upon receipt of a DSHS-authorized petition, the court must order a full evidentiary hearing within 45 days. RCW 71.09.090(1). Either party may demand that the hearing be a jury trial. RCW 71.09.090(3)(a). The State may challenge the DSHS recommendation and in doing so must prove beyond a reasonable doubt that a detainee who seeks unconditional release continues to meet the SVP definition. RCW 71.09.090(3)(a), (c); In re Ambers, 160 Wash.2d at 548-49, 158 P.3d 1144.
¶ 10 It is only if a detainee petitions for release without DSHS authorization that a show cause hearing is required under RCW 71.09.090(2)(a). In re Ambers, 160 Wash.2d at 548, 158 P.3d 1144; 13 Royce A. Ferguson, Jr., Washington Practice: Criminal Practice and Procedure, § 5416 at 572-74 (3d ed. 2004). At a show cause hearing, the trial court determines whether probable cause exists to warrant a full hearing on the issue of unconditional release. RCW 71.09.090(2)(a); In re Ambers, 160 Wash.2d at 548, 158 P.3d 1144. The State must present prima facie evidence establishing that the detainee continues to be an SVP. RCW 71.09.090(2)(b). If the State cannot or does not prove this prima facie case, there is probable cause to believe continued confinement is not warranted and the matter must be set for the full evidentiary hearing described in RCW 71.09.090(3). RCW 71.09.090(2)(c); In re Det. of Petersen, 145 Wash.2d 789, 798, 42 P.3d 952 (2002).
¶ 11 Here, the trial court treated the proceeding before it as a show cause hearing and found no probable cause to support a full hearing on whether Cherry still meets the SVP definition. In doing so, the court violated RCW 71.09.090. Furthermore, the trial court's findings of fact demonstrate that it weighed the evidence in determining whether probable cause existed, which it was not entitled to do. See In re Det. of Elmore, 162 Wash.2d 27, 37, 168 P.3d 1285 (2007) *944 (court may not weigh evidence in determining whether probable cause exists but must decide whether the facts, if believed, establish that the person is no longer an SVP). Because DSHS authorized Cherry's petition for unconditional release, there was no probable cause issue before the court. But even if there had been, the State's admission that Cherry no longer meets the necessary criteria constituted probable cause to believe that continued confinement was unwarranted, thus requiring the trial court to grant a full hearing on the matter. RCW 71.09.090(3); In re Petersen, 145 Wash.2d at 798, 42 P.3d 952.
¶ 12 Cherry also argues that the trial court violated CR 41 in rejecting the parties' agreed order to dismiss the original SVP petition and grant him unconditional release. Although it did not do so below, the State indicated during oral argument that it would move for mandatory dismissal on remand. But Cherry and the State misperceive the effect of such a motion and the nature of the action pending before the trial court to which CR 41 would apply. CR 41(a)(1)(A) provides that dismissal is mandatory when all parties who have appeared stipulate to the dismissal in writing. Here, the action then pending before the trial court to which any stipulated order of dismissal would apply was Cherry's petition for a trial and unconditional release from detention. The effect of an agreed dismissal of Cherry's petition would have been continued detention under the original petition for commitment that was adjudicated in 1999. Cherry is detained based on a 1999 final adjudication that he is a sexually violent predator and subsequent commitment and conditional release orders. CR 41 is not a remedy available to vacate final orders. The dissent and the parties apparently believe that by filing a stipulated CR 41 voluntary dismissal order they can compel the trial court to retroactively dismiss the original SVP petition and unconditionally release Cherry from court-ordered supervision. But CR 41 applies to compel the court to dismiss actions which have not been adjudicated. A post-adjudication stipulation by the parties does not mandate that a trial court vacate its previous orders and dismiss an SVP petition previously adjudicated.
¶ 13 Accordingly, we reverse and remand for proceedings in accord with the statutes governing the unconditional release of persons previously adjudicated as sexually violent predators.
I concur: JOHANSON, J.
ARMSTRONG, J. (dissenting).
¶ 14 Because both Cherry and the State agree that he is entitled to dismissal of the State's SVP petition and unconditional release, I dissent from the majority's refusal to remand with instructions for the trial court to dismiss the State's underlying petition to hold Cherry as an SVP.
¶ 15 In his 2007, 2008, and 2009 reviews, Dr. Manley reported that Cherry no longer met the definition of an SVP and was entitled to an unconditional release. In his 2009 report, Dr. Manley concluded:
In sum, Mr. Cherry's ongoing and successful management of his individualized dynamic risk, his persistent adherence to court and therapeutic conditions, and his overall rigorous application of his Relapse Prevention Plan indicate Mr. Cherry has reduced his risk below the "more likely than not" statutory threshold. Mr. Cherry's endeavors have reduced his risk level to be safely discharged from civil commitment....
It is the opinion of the undersigned that Mr. Cherry does not currently meet the definition of a sexually violent predator. Based on his consistent community deportment, continued treatment participation, and continued sobriety, Mr. Cherry has reached treatment readiness to be granted an unconditional release from his present commitment status.
Br. of Appellant, Appendix A at 9. The psychological staff at the SCC who oversees treatment progress, the SCC superintendent, and Cherry's sex offender treatment provider also recommended Cherry's unconditional release in 2009 based on his progress in treatment and his successful self-management in the community for six years. In spite of these recommendations, the trial *945 court refused Cherry both the stipulated dismissal and a jury trial.
¶ 16 CR 41(a) governs the timing, circumstances, and conditions of a voluntary dismissal of an action before its full adjudication on the merits. 10 David E. Breskin, Washington Practice: Civil Procedure Forms and Commentary, § 41.1, at 21 (2000 ed. supp. 2010-11).
¶ 17 CR 41(a)(1)(A) states that "any action shall be dismissed" when the parties so stipulate in writing. "Where the language of the rule makes clear that the court `shall' grant the motion for dismissal, the court has no discretion under the [r]ule to do otherwise." 10 D. Breskin, supra, § 41.1, at 21; see also Spokane County v. Specialty Auto & Truck Painting, 153 Wash.2d 238, 250, 103 P.3d 792 (2004) (parties may stipulate to dismissal under CR 41 at any time; trial court has no discretion to deny the requested result) (Sanders, J., concurring and dissenting in part).
¶ 18 The majority does not contest that CR 41 applies to SVP proceedings. But it avoids granting the relief both parties request because it believes the parties misapplied CR 41. The majority reasons that Cherry is being held pursuant to "final adjudication" in 1999 that "he is a sexually violent predator;" that CR 41 cannot be used to vacate a "final order;" and that the only petition subject to a CR 41 dismissal was Cherry's petition for unconditional release. Majority at 943. The majority cites no authority for this line of reasoning. Nor does it explain the inconsistency between its "final adjudication" analysis and its earlier discussion that "[b]ecause SVP commitment is indefinite, the due process requirement that a detainee be mentally ill and dangerous is ongoing," and requires DSHS to annually evaluate SVP detainees. Majority at 943; RCW 71.09.070; Moore, 167 Wash.2d at 124, 125 n. 3, 216 P.3d 1015; Ambers, 160 Wash.2d at 548, 158 P.3d 1144. Yet, if the majority is correct that the 1999 adjudication was a final decision, Cherry's status as an SVP could never change. The SVP statutes contemplate just the oppositean ongoing process granting a detainee the possibility of eliminating his or her SVP status. In fact, the majority concedes that the State is detaining Cherry on the basis of the 1999 adjudication and "subsequent commitment and conditional release orders." Majority at 944.
¶ 19 More importantly, the trial court understood perfectly what the parties sought. The stipulated order asked the court to dismiss the "State's petition and to unconditionally release ... Cherry." Br. of Appellant, Appendix E, at 1. The State attached to the proposed order 47 exhibits that detailed Cherry's counseling progress. Finally, in rejecting the parties' stipulation, the trial court went directly to the merits, finding beyond a reasonable doubt that Cherry still met the criteria for an SVP. In short, the trial court denied the parties' stipulated motion because it believed Cherry to still be an SVP, not because the parties presented the wrong order, i.e. one dismissing the State's original petition rather than one granting Cherry's petition for unconditional release. Finally, because the majority's CR 41 "final adjudication" analysis was not argued below or before us, the parties have had no opportunity to brief and argue the analysis. This is unfair to the parties. And it deprives us of the parties' analysis of the majority's argument that Cherry's 1999 SVP determination was a final adjudication, not subject to CR 41 dismissal.
¶ 20 Because of the trial court's decision, Cherry has been detained as an SVP in violation of his due process rights for nearly two years after the State conceded it no longer had the right to do so. See Ambers, 160 Wash.2d at 548-49, 158 P.3d 1144. Moreover, forcing the State to proceed when it cannot prove the case is inconsistent with the SVP statutes and a prosecutor's ethical obligation to prosecute only cases it can prove. See RPC 3.8(a) (prosecutor shall refrain from prosecuting charge known to lack probable cause); RCW 71.09.060(1) (State may move for dismissal if jury cannot reach unanimous verdict on SVP commitment). I would hold that the trial court erred in refusing to accept the agreed order.
¶ 21 Finally, the majority's remand for a jury trial is a futile act; the State advises us that if we remand for a jury trial, it will move for a mandatory dismissal under CR *946 41(a)(1)(B). I would reverse and remand to the trial court with instructions to grant the stipulated dismissal and unconditionally release Cherry.