FILED
FEBRUARY 25, 2016
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32926-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DENNIS W. RIOJAS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Dennis Riojas pled guilty to assault in the first degree. At sentencing, the trial court imposed a variety of legal financial obligations, including $1,633.44 in discretionary costs and a deoxyribonucleic acid (DNA) collection fee. On appeal, Riojas challenges his sentence on four grounds: (1) the trial court erred when it imposed discretionary financial obligations without conducting an inquiry into his ability to pay, (2) the DNA collection fee violates substantive due process, (3) the DNA collection fee violates equal protection, and (4) the trial court abused its discretion when ordering Riojas to submit a DNA sample, when he had previously submitted one.

No. 32926-7-III
*State v. Riojas*

FACTS

The underlying facts hold little relevance to this appeal. On May 31, 2013, Dennis Riojas shot Jessie Colley.

PROCEDURE

The State of Washington charged Dennis Riojas with assault in the first degree, with a deadly weapon enhancement, and unlawful possession of a firearm. Riojas pled guilty to first degree assault, and, in exchange, the State dismissed the deadly weapon enhancement and the unlawful possession charge. Riojas faced a standard range sentence for the assault charge of 138 to 184 months. The State, however, agreed to seek an exceptional sentence downward of eighty-nine months.

At the sentencing hearing, the trial court sentenced Dennis Riojas to 138 months, the low end of the standard range. The court also imposed legal financial obligations as follows: $500.00 victim assessment fee, $200.00 criminal filing fee, $658.44 sheriff services fee, $350.00 for the court appointed attorney, $500.00 fine, $125.00 crime lab fee, and $100.00 DNA collection fee. The obligations total $2,433.44, but the trial court entered the sum of $1,675.00 in the judgment and sentence. The judgment and sentence included the standard boilerplate language about legal financial obligations: "The court has considered the total amount owing, the defendant's present and future ability to pay legal financial obligations, including the defendant's financial resources and the

2

likelihood that the defendant's status will change." Clerk's Papers (CP) at 21. The trial

court imposed a payment schedule of $50 per month.

The judgment and sentence also addressed DNA testing. The document reads:

"[t]he defendant shall have a biological sample collected for purposes of DNA

identification," and "this paragraph does not apply if it is established that the Washington

State Patrol crime laboratory already has a sample from the defendant for a qualifying

offense." CP at 25.

During sentencing, Dennis Riojas forwarded no objection to the legal financial

obligations. The trial court record, including the sentencing hearing transcript, lacks any

information of Riojas' finances or work prospects.

## LAW AND ANALYSIS

### *Legal Financial Obligations*

Dennis Riojas contends that the trial court improperly required him to pay legal

financial obligations without considering his financial resources under RCW

10.01.160(3). He challenges all of the legal financial obligations imposed by the trial

court.

Dennis Riojas did not object to the challenged obligations before the trial court.

He argues that he may still assert error for the first time on appeal under RAP 2.5.

Because of the amount of discretionary legal financial obligations, we exercise our

3

discretion in reaching the issue and remand for the trial court to properly determine whether Riojas has, or will have, the ability to pay the legal financial obligations.

The trial court imposed a $500 victim assessment fee, a $200 criminal filing fee, and a $100 DNA collection fee. RCW 7.68.035, RCW 36.18.020(2)(h), and RCW 43.43.7541 respectively mandate the fees regardless of the defendant's ability to pay. Trial courts must impose such fees regardless of a defendant's indigency. *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013). Therefore, we only address the $1,633.44 in other fees assessed by the trial court. We affirm the imposition of the $800.00 in mandatory fees.

Courts may impose legal financial obligations if a defendant has or will have the financial ability to pay them. RCW 10.01.160; RCW 9.94A.760(2); *State v. Curry*, 118 Wn.2d 911, 914-16, 829 P.2d 166 (1992). RCW 10.01.160(3) proscribes:

> The court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

In *State v. Blazina*, 182 Wn.2d 827, 838, 344 P.3d 680 (2015), the Washington Supreme Court clarified that RCW 10.01.160(3) requires the trial court "do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry." Rather, the "record must reflect that the trial court made an

4

individualized inquiry into the defendant's current and future ability to pay." *Blazina*, 182 Wn.2d at 838. This inquiry includes evaluating a defendant's financial resources, incarceration, and other debts, including restitution. *Blazina*, 182 Wn.2d at 838-39.

We must decide whether to address this assignment of error when Dennis Riojas did not object to the imposition of financial obligations before the lower court. RAP 2.5(a) provides, in relevant part: "The appellate court may refuse to review any claim of error which was not raised in the trial court." Our high court clarified: "A defendant who makes no objection to the imposition of discretionary [legal financial obligations] at sentencing is not automatically entitled to review." *Blazina*, 182 Wn.2d at 832 (footnote omitted). "Each appellate court must make its own decision to accept discretionary review [of claimed financial obligation errors not appealed as a matter of right]." *State v. Blazina*, 182 Wn.2d at 835. Nevertheless, the *Blazina* court also clarified that a challenge to the trial court's entry of a financial obligations order under RCW 10.01.160(3) is nevertheless ripe for judicial determination. *Blazina*, 182 Wn.2d at 832 n.1.

The *Blazina* court noted reasons for review of legal financial obligations before collection activities. A judgment for legal financial obligations accrues interest at a high rate, employment and housing background checks show an active record in the superior court as a result of the obligations, and the judgment for the financial obligations impairs the obligor's credit. In short, pending legal financial obligations increase the difficulty of

5

a defendant in reentering society. Therefore, we follow the spirit and purpose of both RCW 10.01.160 and *Blazina* by reviewing the record here to determine whether the trial court engaged in an on-the-record inquiry as to Dennis Riojas' ability to pay financial obligations.

The record shows no inquiry into Dennis Riojas' past or future financial capability. Riojas is a currently incarcerated indigent defendant, both characteristics about which the Supreme Court instructed trial courts to include in their inquiry under RCW 10.01.160(3). *Blazina*, 182 Wn.2d at 838-39. We remand the judgment and sentence to the trial court, with instructions to reset Riojas' discretionary legal financial obligations after conducting the required inquiry into his present and future ability to pay.

### *DNA Collection Fee*

Dennis Riojas challenges the $100 DNA collection fee on two constitutional grounds and on the ground that he previously submitted to a collection. In advancing his constitutional theories, Riojas argues that the order demanding payment violates his and others' equal protection and due process rights because of an inability to pay.

RCW 43.43.754 demands a biological sample, for purposes of DNA identification analysis, from an adult convicted of a felony. In turn, RCW 43.43.7541 imposes a $100 mandatory fee on the adult convicted of a felony to defray the cost of the collection of the sample. The latter statute reads, in relevant part:

6

> Every sentence imposed for a crime specified in RCW 43.43.754 must include a fee of one hundred dollars. The fee is a court-ordered legal financial obligation as defined in RCW 9.94A.030 and other applicable law. For a sentence imposed under chapter 9.94A RCW, the fee is payable by the offender after payment of all other legal financial obligations included in the sentence has been completed. For all other sentences, the fee is payable by the offender in the same manner as other assessments imposed. . . .

Dennis Riojas did not challenge the constitutionality of the DNA collection fee before the trial court. We, therefore, decline to address the argument under the circumstances of this appeal.

A party may not generally raise a new argument on appeal that the party did not present to the trial court. *In re Det. of Ambers*, 160 Wn.2d 543, 557 n.6, 158 P.3d 1144 (2007). A party must inform the court of the rules of law it wishes the court to apply and afford the trial court an opportunity to correct any error. *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983).

RAP 2.5 formalizes a fundamental principle of appellate review. The first sentence of the rule reads:

> **(a) Errors Raised for First Time on Review.** The appellate court may refuse to review any claim of error which was not raised in the trial court.

No procedural principle is more familiar than that a constitutional right, or a right of any other sort, may be forfeited in criminal cases by the failure to make timely assertion of

the right before a tribunal having jurisdiction to determine it. *United States v. Olano*, 507 U.S. 725, 731, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); *Yakus v. United States*, 321 U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 834 (1944).

Good sense lies behind the requirement that arguments be first asserted at trial. The prerequisite affords the trial court an opportunity to rule correctly on a matter before it can be presented on appeal. *State v. Strine*, 176 Wn.2d 742, 749, 293 P.3d 1177 (2013). There is great potential for abuse when a party does not raise an issue below because a party so situated could simply lie back, not allowing the trial court to avoid the potential prejudice, gamble on the verdict, and then seek a new trial on appeal. *State v. Weber*, 159 Wn.2d 252, 271-72, 149 P.3d 646 (2006); *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012). The theory of preservation by timely objection also addresses several other concerns. The rule serves the goal of judicial economy by enabling trial courts to correct mistakes and thereby obviate the needless expense of appellate review and further trials, facilitates appellate review by ensuring that a complete record of the issues will be available, and prevents adversarial unfairness by ensuring that the prevailing party is not deprived of victory by claimed errors that he had no opportunity to address. *State v. Strine*, 176 Wn.2d at 749-50; *State v. Scott*, 110 Wn.2d 682, 685-88, 757 P.2d 492 (1988).

Countervailing policies support allowing an argument to be raised for the first time

8

on appeal. For this reason, RAP 2.5(a) contains a number of exceptions. RAP 2.5(a) allows an appellant to raise for the first time "manifest error affecting a constitutional right," an exception on which a criminal appellant commonly relies. Constitutional errors are treated specially under RAP 2.5(a) because they often result in serious injustice to the accused and may adversely affect public perceptions of the fairness and integrity of judicial proceedings. *State v. Scott*, 110 Wn.2d at 686-87. Prohibiting all constitutional errors from being raised for the first time on appeal would result in unjust imprisonment. 2A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 2.5 author's cmt. 6, at 218 (8th ed. 2014). On the other hand, "permitting *every possible* constitutional error to be raised for the first time on appeal undermines the trial process, generates unnecessary appeals, creates undesirable retrials and is wasteful of the limited resources of prosecutors, public defenders and courts." *State v. Lynn*, 67 Wn. App. 339, 344, 835 P.2d 251 (1992).

Washington courts and even decisions internally have announced differing formulations for "manifest error." First, a manifest error is one "truly of constitutional magnitude." *State v. Scott*, 110 Wn.2d at 688. Second, perhaps perverting the term "manifest," some decisions emphasize prejudice, not obviousness. The defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights. It is this showing of actual prejudice that makes

9

the error "manifest", allowing appellate review. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2010); *Scott*, 110 Wn.2d at 688; *Lynn*, 67 Wn. App. at 346. A third and important formulation for purposes of this appeal is the facts necessary to adjudicate the claimed error must be in the record on appeal. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995); *State v. Riley*, 121 Wn.2d 22, 31, 846 P.2d 1365 (1993).

In *State v. Riley*, Joseph Riley argued that the admission of incriminating statements violated his Fourth Amendment rights because the statements were the fruit of an illegal search of his home. The state high court refused to entertain the argument because the record lacked clarity as to whether Riley uttered the statements before being told the investigating officer possessed a search warrant.

We consider whether the record on appeal is sufficient to review Dennis Riojas' constitutional arguments. Riojas' contentions assume his poverty. Nevertheless, the record contains no information, other than Riojas' statutory indigence for purposes of hiring an attorney, that he lacks funds to pay a $100 fee. The cost of a criminal charge's defense exponentially exceeds $100. Therefore, one may be able to afford payment of $100, but not afford defense counsel. Riojas has presented no evidence of his assets, income, or debts. Thus, the record lacks the details important in resolving Riojas' constitutional arguments.

10

Dennis Riojas emphasizes that other mandatory fees must be paid first and interest will accrue on the $100 DNA collection fee. This emphasis helps Riojas little, since we still lack evidence of an inability to pay.

Dennis Riojas next contends that the trial court committed error when ordering him to submit to a DNA collection, when he has already submitted to one. We have only argument, and no evidence, that the State Patrol previously seized a sample of Riojas' DNA. More importantly, the trial court qualified its order with language stating that Riojas need not submit to collection if the State already has a sample.

The DNA collection statute requires a DNA sample only if the State lacks a sample already. RCW 43.43.754(2) states: "If the Washington state patrol crime laboratory already has a DNA sample from an individual for a qualifying offense, a subsequent submission is not required to be submitted." The trial court did not breach the statute. Riojas may avoid submitting to another collection if the State Patrol holds a sample already.

## CONCLUSION

We remand to the trial court to conduct an individualized inquiry as to Dennis Riojas' financial ability to pay discretionary legal financial obligations. Otherwise, we affirm Riojas' sentence.

11

No. 32926-7-III
*State v. Riojas*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

I CONCUR:

_____
Lawrence-Berrey, J.

12

32926-7-III

KORSMO, J. (dissenting in part) — While I agree with the majority's resolution of the DNA collection fee issue, I disagree with the decision to put the county to the expense of conducting another sentencing hearing due to the LFO issue since Mr. Riojas did not complain at his initial sentencing where his focus was on obtaining an exceptional sentence. That fact alone exhibits a tactical reason not to raise a claim of poverty at sentencing. For the reasons well stated by Chief Judge Siddoway in her concurring opinion in *State v. Munoz-Rivera*, 190 Wn. App. 870, 361 P.3d 182 (2015), and in her opinion for this court in *State v. Duncan*, 180 Wn. App. 245, 327 P.3d 699 (2014), *review granted*, 183 Wn.2d 1013 (2015), I would affirm. I also note that the majority's rationale for declining to review the DNA issue also is equally applicable to the LFO issue. Finally, there is no need to reach this statutory claim in light of the fact that the same statute permits Mr. Riojas to petition for remission of his LFOs at any time. RCW 10.01.160(4). For all of these reasons, we should not be sending this case back.

_____
Korsmo, J.